Jeffrey GORMAN, Plaintiff,

v.

Steven BISHOP, et al., Defendants.

No. 95-0475-CV-W-3.

United States District Court,
W.D. Missouri,
Western Division.

March 26, 1996.

Connie Knight Sieracki, Michael L. Hodges, Crabtree Law Offices, P.A., Shawnee Mission, KS, and John M. Simpson, John M. Simpson, Chartered, Kansas City, MO, for plaintiff.

Dale H. Close and Lisa Sander Morris, Kansas City Police Dept., Legal Advisor's Office, Kansas City, MO, for defendants.

## ORDER

SMITH, District Judge.

Pending before the Court is Defendant Steven Bishop's ("Bishop's") Motion to Dismiss or, in the alternative, for Summary Judgment. As more fully set forth below, the Motion for Summary Judgment is GRANTED.

## I. BACKGROUND

Plaintiff suffers from paraplegia resulting from a severe spinal cord injury and is confined to a wheelchair. Late in the evening of May 30, 1992, Plaintiff was asked to leave a country-western bar in the Westport area of Kansas City; Plaintiff believes he was asked to leave the bar because he was in a wheelchair. Plaintiff left the bar but remained on the sidewalk outside the bar and solicited assistance from two officers of the Kansas City Missouri Police Department ("KCMOPD"); however, instead of helping Plaintiff as he desired the officers arrested him.

A police van driven by Defendant Neil Becker ("Becker") arrived at approximately 1:30 a.m. on May 31 to transport Plaintiff to the police station. The van was not equipped with a wheelchair lift or wheelchair restraints. Becker, with the assistance of another officer (who is not a party to this suit), lifted Plaintiff from his wheelchair and placed him on a wooden bench inside the van. Plaintiff's physical condition prevented him from supporting himself on the bench, so Becker used Plaintiff's belt to tie his upper body to the wire mesh wall behind the bench. Once the van began moving, Plaintiff was unable to hold himself on the bench; at some time during the trip the belt broke and Plaintiff fell from the bench. As a result, Plaintiff suffered injuries to his back and shoulders.

Plaintiff has filed this suit against Bishop (who, at that time, was Chief of Police), Becker, and various individuals who at that time were or currently are members of the Board of Police Commissioners for KCMOPD (the "Board"). It appears that these individuals have been sued in their individual and official capacities. Neither the KCMOPD nor the Board have been named

as defendants.[1] The Amended Complaint does not set forth Plaintiff's claims in discrete counts, but appears to assert causes of action for (1) violations of the Rehabilitation Act, 29 U.S.C. § 794, (2) violations of the Americans with Disabilities Act, 42 U.S.C. § 12132 (the "ADA"), and (3) negligence. These claims are based upon the fact that Plaintiff was not transported in a wheelchair-accessible vehicle, the lack of training and procedures for detaining and transporting handicapped arrestees, and the manner in which Plaintiff was detained and transported.[2]

## II. DISCUSSION

### A. Standards

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir.1986). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588–89, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir.1984), cert. denied, 470 U.S. 1057, 105 S.Ct. 1767, 84 L.Ed.2d 828 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of. the ... pleadings, but ... by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

### B. ADA

The ADA became effective on January 26, 1992, or approximately four months before the events giving rise to this suit. The ADA's legislative history is replete with indications that the ADA was based on the Rehabilitation Act; in fact the similarity in the two statutory schemes has been acknowledged by the parties and has led courts to conclude that cases construing one are instructive with respect to the other. See, e.g., Wooten v. Farmland Foods, 58 F.3d 382, 386 n. 2 (8th Cir.1995). For the same reasons that Bishop would be entitled to assert a defense of qualified immunity with respect to claims under the Rehabilitation Act, see Lue v. Moore, 43 F.3d 1203, 1205 (8th Cir.1994), Bishop is entitled to raise the defense with respect to the ADA claim. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "In other words, to decide whether an official is entitled to qualified immunity, a court must determine whether the official's action was objectively legally reasonable in light of the legal rules that were clearly established at the time the action occurred." George v. City of St. Louis, 26 F.3d 55, 57 (8th Cir.1994) (quotations omitted); see also Sellers v. Baer, 28 F.3d 895, 899 (8th Cir.1994), cert. denied, — U.S. ——, 115 S.Ct. 739, 130 L.Ed.2d 641 (1995).

Subchapter II of the ADA applies to Public Services and, in pertinent part, declares that "no qualified individual with a disability shall, by reason of such disability ... be excluded from participation in or be denied the benefits of the services, programs,

---

1. Because the individuals have been sued in their official capacities, it may be proper to construe the Amended Complaint as seeking relief from KCMOPD and/or the Board. See Williams v. City of Kansas City, 841 S.W.2d 193, 196 (Mo.Ct. App.1992). In any event, the issue is not currently before the Court so there is no need for the Court to reach a decision on this point. However, Bishop is no longer the Chief of Police for the KCMOPD, and if Bishop was sued in his official

capacity his successor should be substituted in this action. See Fed.R.Civ.P. 25(d). Now that Bishop's successor has been selected, see Kansas City Star, March 21, 1996, at A–1, the Court would entertain a motion designed to accomplish this purpose.

2. Significantly, Plaintiff does not assert that he was arrested because of his handicap.

or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2).

Plaintiff contends that the broad language of § 12132 means that it is unlawful for a public entity (which includes KCMOPD; *see* 42 U.S.C. § 12131(1)(B)) to discriminate in any way against people based on their handicap. However, the ADA's breadth is not as obvious as Plaintiff contends; attempting to apply these provisions to this case demonstrates the difficulty in determining whether or not the ADA applies to Plaintiff's situation. In order to be protected under the circumstances, Plaintiff had to be a "qualified individual with a disability," not simply a person with a disability. The term was specifically defined by Congress to describe a person who meets eligibility requirements for the receipt of services or participation in programs. It strains the statute to talk about Plaintiff's "eligibility" to be arrested and taken to jail or to participate in being arrested by the KCMOPD. To the extent there are "eligibility requirements" for being arrested, it seems those standards are established by laws defining crimes and the Fourth Amendment. Thus, had Plaintiff been arrested because he was handicapped, his arguments would more clearly satisfy the statutory requirements. This, however, is not his contention.

Many of these difficulties are highlighted in the Fourth Circuit's opinion in *Torcasio v. Murray*, 57 F.3d 1340 (4th Cir.1995). There, the Fourth Circuit held that state prison officials were entitled to qualified immunity in a suit alleging violations of the ADA. Much of the Fourth Circuit's reasoning easily transfers to the case at bar; a person who has been arrested "is not normally thought of as one who would have occasion 'to meet[ ] the essential eligibility requirements' for receipt of or participation in the services, programs or activities of a public entity. The

terms 'eligible' and 'participate' imply voluntariness on the part of an applicant who seeks a benefit from the state; they do not bring to mind [criminal suspects] who are being held against their will." *Id.* at 1347 (quotations in original). The Court shares the Fourth Circuit's view that these terms are ill-fitting, at best, in the context of arrested individuals, leading to the further conclusion that the applicability of the ADA to the case at bar is far from clear on the face of the statute. *See id.*

Plaintiff attempts to distinguish *Torcasio* by emphasizing that *Torcasio* involved a prison setting. Although this is an accurate distinction, it does not aid Plaintiff's cause. First, the statutory language remains the same; that *Torcasio* involved a prison does not change the lack of clarity. Thus, regardless of any similarities or differences between a prison setting and the circumstances involved here, the ADA's terms do not clearly apply to the circumstances surrounding Plaintiff's arrest. Stated another way, the ambiguity in the statute stands alone as justification for affording Bishop immunity. Second, to the extent that the Fourth Circuit found it significant "that the management of state prisons is a core state function" requiring that "Congress ... speak unequivocally before ... conclud[ing] that it has 'clearly' subjected state prisons to its enactments," *id.* at 1345–46, the same arguments can be made with respect to the actions of local law enforcement authorities. Law enforcement is a core governmental obligation of state and local government, and Congress has not clearly indicated a desire to intrude upon the operations of local police departments to require changes in their vehicles and training requirements beyond narrow circumstances that are not applicable to the case at bar.

Plaintiff also emphasizes the ADA's legislative history, which discusses certain types of police conduct. The relevance of legislative history is dubious in this instance; if one must resort to legislative history to ascertain the ADA's meaning, the ADA's requirements can hardly be considered "clearly established." Setting this problem aside, the history does not aid Plaintiff. To the extent the legislative history discusses arrests of handi-

capped individuals, it evinces a concern that disability-related conduct (e.g., an epileptic seizure) is confused with criminal activity, leading to the arrest of the disabled individual. *E.g.,* H.R.Rep. No. 485(III), 101st Cong., 2d Sess. 50., *reprinted in* 1990 U.S.C.C.A.N. 445, 473. This describes a situation, as outlined above, wherein a person was arrested because of his disability; it does not describe the present situation, and Plaintiff has identified no part of the legislative history that clearly addresses the present situation.

Reliance on the legislative history is also hazardous because it is not clear. The paragraph above discusses the report of the House Committee on the Judiciary. Elsewhere, the House Committee on Education and Labor opined that the ADA "essentially simply extends the anti-discrimination prohibition ... to all actions of state and local governments." H.R.Rep. No. 485(II), 101st Cong., 2d Sess. 84. *reprinted in* 1990 U.S.C.C.A.N. 303, 367. Of course, this is not what the statute actually says. More importantly, it demonstrates the hazard in relying on legislative history to determine the clear meaning of the ADA as it existed on May 31, 1992. Are the comments from the Judiciary Committee more persuasive because they specifically discuss arrests or because one would expect the Judiciary Committee to consider and discuss police conduct more readily than the Education and Labor Committee? Are the latter Committee's comments more applicable because they are more generally instructive of Congress'—or at least that Committee's—intent? And what of the thoughts of the third Committee to issue a report, which report does not contain any statements that appear relevant to the case at bar? *See* H.R.Rep. No. 485(I), 101st Cong., 2d Sess., *reprinted in* 1990 U.S.C.C.A.N. 267 (Report from the House Committee on Public Works and Transportation). Thus, even if the legislative history could be relied upon in determining what constitutes the clear meaning of the ADA, its use in this situation does not aid Plaintiff's case.

Plaintiff next points to various regulations promulgated by the Attorney General to interpret and implement the ADA. Some of the regulations were promulgated after May 31, 1992, and therefore cannot be considered part of the law in existence at the time Plaintiff was arrested. With respect to those regulations promulgated prior to the events of May 31, 1992, none address the situation at hand. The regulations codified at 28 C.F.R. §§ 35.149, 35.150 and 35.151 (1992) relate specifically to "program accessibility." These regulations discuss only physical aspects of buildings and have no relevance to the present situation. The general requirements, appearing in § 35.130, also do not apply to policies for arresting individuals. The only discussion of arrests occurs in the preamble to the final regulation. Assuming, without deciding, that the preamble to the regulation can be used to determine the ADA's "clear meaning," the preamble does not aid Plaintiff. In pertinent part, the preamble acknowledges suggestions to enact a regulation requiring "training of law enforcement personnel to recognize the difference between criminal activity and the effects of seizures or other disabilities...." 28 C.F.R. Pt. 35, App. A, at 449. However, because "[d]iscriminatory arrests and brutal treatment are already unlawful police activities," all that the regulations require is that "law enforcement personnel ... make appropriate efforts to determine whether perceived strange or disruptive behavior or unconsciousness is the result of a disability." *Id.*[3]

Finally, Plaintiff points to deposition testimony demonstrating Bishop's awareness of the ADA and its applicability to the KCMOPD. This does not aid Plaintiff's position because there is no denial that some activities of the KCMOPD are affected by the ADA. For instance, that Bishop directed the personnel division commander responsibility for some aspects of ADA compliance is not surprising given that Subchapter I of the ADA, which governs employment practices, does apply to the KCMOPD. Furthermore, KCMOPD does administer some programs

**3.** Plaintiff also suggests that page 458 of the preamble "makes it clear that arrests are covered." Nothing on page 458 discusses arrests;

the discussion on that page focuses on access to buildings.

(such as drug awareness and education programs) to which the ADA does clearly apply. The ADA also has implications with regard to access to public buildings, which might include police stations. Finally, it must be noted that Bishop never stated that he believed the ADA applied to the situation at issue. Although the evidence is to be viewed in the light most favorable to Plaintiff, the Court concludes that Bishop's deposition testimony does not present a relevant factual dispute regarding Bishop's knowledge and understanding of the ADA's application to the facts of this case.

For the reasons expressed above, the Court concludes that the ADA's applicability to the manner in which individuals are arrested and transported following an arrest was not clear on May 31, 1992. The Court further concludes that a reasonable official in Bishop's situation could not have been expected to know that the ADA applied in this situation. Accordingly, Bishop is entitled to summary judgment based on qualified immunity.

### C. The Rehabilitation Act

■ The Rehabilitation Act provides in pertinent part that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, ... be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a). Relying on prior decisions interpreting similar language in other statutes, the Supreme Court declared that "[c]learly, this language limits the ban on discrimination to the specific program that receives the federal funds." *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 635, 104 S.Ct. 1248, 1255, 79 L.Ed.2d 568 (1984) (citing *Grove City College v. Bell*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984) and *North Haven Bd of Ed. v. Bell*, 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982)). In response, *see* S.Rep. No. 64, 100th Cong., 2d Sess. 2–4. *reprinted in* 1988 U.S.C.C.A.N. 3, 3–5, Congress passed the Civil Rights Restoration Act of 1987 (the "Restoration Act"), which defined the phrase "program or activity" to mean "all of the operations of a department, agency, ... or other instrumentality of a State or of a local government ... any part of which is extended Federal financial assistance." 29 U.S.C. § 794(b)(1)(A). Plaintiff contends that the Restoration Act evinces Congress' desire to extend the Rehabilitation Act to every and any action taken by a recipient of federal funds. However, this conclusion was not clearly established in the time period between the Restoration Act's passage and May 31, 1992. When read in conjunction with the other provisions of the Rehabilitation Act, the concept of "program or activity" does not readily encompass a police department's function of arresting lawbreakers and transporting them to the police station. The KCMOPD was not extending Plaintiff an opportunity to participate in a program, nor was it including him in an activity. *See Torcasio*, 57 F.3d at 1346–47. In addition to this difficulty in including the transport of Plaintiff within the ordinary meaning of the Rehabilitation Act, it should be noted that the events giving rise to *Torcasio* took place in 1993. 57 F.3d at 1342. Given that courts were addressing (and rejecting) arguments similar to Plaintiff's in 1993, it is difficult for this Court to conclude that the Rehabilitation Act clearly applied to the circumstances of Plaintiff's transport to jail. Accordingly, the Court concludes Bishop is entitled to qualified immunity with respect to Plaintiff's claims under the Rehabilitation Act.

### D. Negligence

■ Plaintiff asserts that Bishop is liable for his negligent disregard and implementation of the ADA. Bishop asserts that he is immune from tort liability based on the doctrine of official immunity. "It is well established that public officers acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions, but they may be held liable for torts committed when acting in a ministerial capacity." *Kanagawa v. State ex rel. Freeman*, 685 S.W.2d 831, 835 (Mo. banc 1985). "A discretionary function is one in which the employee must exercise reason in the adaptation of means to an end and discretion in determining how or whether the act should be done." *R.C. v. Southwestern Bell Tel. Co.*, 759 S.W.2d 617, 620 (Mo.Ct.App.1988); *see*

*also Kanagawa,* 685 S.W.2d at 836; *Beaver v. Gosney,* 825 S.W.2d 870, 874 (Mo.Ct.App. 1992). In alleging that Bishop negligently failed to administer and implement the ADA, Plaintiff challenges discretionary decisions for which Bishop is entitled to immunity.

### III.   CONCLUSION

For the reasons set forth above, Bishop's Motion for Summary Judgment (Doc. # 61) is GRANTED insofar as Plaintiff seeks relief from Bishop in his individual capacity.

IT IS SO ORDERED.