R.C., Plaintiff–Appellant,

v.

SOUTHWESTERN BELL TELEPHONE
COMPANY, et al.,
Defendants–Respondents.

No. 53985.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 6, 1988.

Application to Transfer Denied
Nov. 15, 1988.

Lawrence D. Mass, Donna A. Smith, St. Louis, for plaintiff-appellant.

James J. Wilson, John F. Fitzgibbon, St. Louis, for City of St. Louis.

James A. Daugherty, St. Louis, for Southwestern Bell Tel. Co.

SMITH, Judge.

Plaintiff appeals from the dismissal of her cause of action against the City of St. Louis, the members of the St. Louis Board of Police Commissioners personally and in their official capacities, and an employee of the police department, Canada, and from the trial court's order sustaining a motion for directed verdict in favor of Southwestern Bell Telephone. We affirm.

Plaintiff's cause of action arose from an assault against her in which she was harassed, terrorized, raped and sodomized on May 15, 1984, by Eric Clark. The attack occurred at approximately 2:30 a.m. Plaintiff was sharing an apartment at 4905 Argyle with several other women. Her brother was also staying at the apartment temporarily. One of plaintiff's roommates returned from walking her dog and was accosted by Clark who at gunpoint forced entrance into the apartment. He bound the occupants and then took plaintiff throughout the apartment looking for money. Finally he took plaintiff into a bathroom adjoining her room where he sexually harassed her. One of the roommates slipped out of her bonds and used the telephone to dial "911", the emergency services number for the City and County of St. Louis. Because Clark was still on the premises the roommate spoke in a low voice or whisper. The complaint evaluator was unable to understand the address given by the caller and wrote down an incorrect address. He then issued an "all points bulletin" for that incorrect address reporting a hold-up in progress.

Suspecting that the address might be incorrect the evaluator attempted to call back to the telephone number of the apartment. That number had been displayed at the time of the call on a screen before him. The call was not completed because Clark ripped the telephone out of the wall when he heard it ringing. The evaluator called a special services number furnished by Bell in order to obtain the address at which the phone was located. Before the evaluator could say anything the special services operator stated, "sorry our computers are down." The evaluator replied, "Thank

you" and the connection was broken. The evaluator attempted to locate the address through cross-reference books kept at the evaluator's workplace. Because the number was an unlisted number it was not contained in the cross-reference books available. The initial call was placed at 2:29:36 a.m. and the cross-references had been examined by 2:33:23 less than four minutes later.

There was evidence from which a jury could have found that a police officer could and probably would have arrived at the apartment within two minutes of having the correct address. There was also evidence that a period of at least four minutes elapsed between the time of the first call and the sodomy and rape of plaintiff by Clark.

Plaintiff brought her lawsuit against all defendants on the basis of negligence.[1] The allegations against the City, the Police Board and Canada were that they had responsibility for supervising, overseeing, and maintaining the 911 emergency number system and that they negligently failed to maintain an amplification system so indistinct voices could be understood, failed to properly train and supervise operators answering the calls, failed to maintain the 911 system so that addresses could be obtained in a matter of seconds, and failed to maintain a proper back-up system to obtain such addresses if one or more parts of the primary system did not function. The negligence of Bell was premised upon its failure to provide a back-up system to trace addresses from known telephone numbers. By a separate count plaintiff sought recovery against Bell on a theory of breach of contract with plaintiff as a third party beneficiary of that contract.

■ After the filing of plaintiff's original petition the City, the Police Board and Canada (hereinafter sometimes referred to as official defendants) filed motions to dismiss. Those motions were granted. Subsequently plaintiff filed an amended petition seeking relief solely against the landlords and Bell. The official defendants

contend that the filing of the amended petition without including them served as an abandonment of the prior pleading precluding an appeal of the dismissal of the original pleading. Generally speaking that is the rule in Missouri. *Scott v. Gibbons,* 611 S.W.2d 387 (Mo.App.1981) [4]. A different approach has been taken by at least some federal courts. Wright and Miller, Federal Practice and Procedure, § 1476; *Scott v. Gibbons, supra.*

■ No Missouri case addresses abandonment under the factual situation presented in this case. We do not believe the abandonment rule should be applied under the circumstances here. That rule has validity when the original pleading and the amended pleading are addressed to the same defendant or arise from a dismissal with leave to amend. As stated in the cases, the plaintiff in the latter case is left with the decision whether to stand on the original petition and appeal or make the amendment. *Heman v. Glann,* 129 Mo. 325, 31 S.W. 589 (1895). It is reasonable that the pleading a plaintiff voluntarily elects to go to trial on is the one that forms the basis for appeal. The case before us presents a different situation. The count against the official defendants was dismissed because they were held to be immune from suit. No amendment could correct that problem. When plaintiff thereafter sought to amend her allegations against the remaining defendants, she did not include the previously dismissed defendants and thereby force those defendants and the court to repeat the dismissal procedure they had previously engaged in. The order dismissing the official defendants was not certified by the trial court as appealable under Rule 74.01. It was not otherwise appealable. Under the facts before us we conclude that plaintiff did not abandon her cause of action against the official defendants by amending her petition. Where the reason for dismissal is not correctable by an amended pleading and the case remains pending against other defendants, the court and the parties should not

1. Plaintiff included as defendants the landlords of the apartment house. During trial a disposition of those defendants was reached and they are not involved in this appeal.

be required to engage in useless procedural gestures in order to preserve the propriety of the dismissal for review.

■ We turn to the merits of that dismissal. We deal first with the City. As a governmental entity it is entitled to sovereign immunity. *Best v. Schoemehl*, 652 S.W.2d 740 (Mo.App.1983) [4, 5]. The tort alleged occurred on May 15, 1984, prior to the September 2, 1985, effective date of the non-retroactive amendment of § 537.600 RSMo 1986. *Yount v. Board of Education for the City of St. Louis*, 712 S.W.2d 455 (Mo.App.1986).

Under that statute there are two exceptions to sovereign immunity for negligent acts. One involves operation of motor vehicles which is not involved here. The other involves injuries caused by the dangerous condition of a public entity's property. Plaintiff seeks to invoke the property exception. That exception has been narrowly construed as "limited to describe, define, explain, denote, or reference only and exclusively the physical defects in, upon, and/or attending to the property of a public entity." *Twente v. Ellis Fischel State Cancer Hospital*, 665 S.W.2d 2 (Mo.App. 1983) [2]; *Kanagawa v. State*, 685 S.W.2d 831 (Mo. banc 1985) [3]. To state a claim under the statute the "plaintiff must allege more than that a public entity's property in some remote way presaged the commission of a tort by another party." *Kanagawa v. State, supra*, [4, 5]. Plaintiff alleged nothing physically defective or dangerous about the 911 system which caused her injuries. Her complaint is that the system did not contain adequate back-up to obtain an address. Such back-up might have allowed assistance in time to have averted the rape and sodomy. The tort from which she sustained injury was committed by Clark and was unrelated to any defect in the physical condition of the City's property. The count against the City was properly dismissed. To the extent that the members of the Board of Police Commissioners were sued in their official capacities as the Board, the doctrine of sovereign immunity applies equally. *Best v. Schoemehl, supra*, [3].

■ As to Canada and the Board members in their individual capacities a different doctrine applies. Public officials are not liable for negligent performance of their discretionary duties under the doctrine of official immunity. They may be liable for negligent performance of ministerial duties. *Jackson v. Wilson*, 581 S.W.2d 39 (Mo.App.1979) [1]. A ministerial duty is one of a clerical nature which a public officer is required to perform under a given state of facts in a prescribed manner, in obedience to the mandate of legal authority without regard to his own judgment or opinion concerning the propriety of the act. *Id.* [2]. A discretionary function is one in which the employee must exercise reason in the adaptation of means to an end and discretion in determining how or whether the act should be done. *Rustici v. Weidemeyer*, 673 S.W.2d 762 (Mo. banc 1984) [17]. The allegations of negligence against these defendants involve discretionary actions. The count against Canada and the Board members individually was properly dismissed.

■ We turn now to the directed verdict in favor of Bell. The general rule is that there exists no duty to protect a party against intentional criminal conduct of unknown third persons. *Advance Rental Centers v. Brown*, 729 S.W.2d 644 (Mo. App.1987) [1, 2]; *Meadows v. Friedman Railroad Salvage Warehouse*, 655 S.W.2d 718 (Mo.App.1983) [1–4]. An exception exists where special relationships or special circumstances exist. *Id.* This exception exists because there are situations in which one might reasonably anticipate a danger from intentional or criminal misconduct because he has brought the victim into contact or association with a person whom he knows or should know to be particularly liable to commit criminal acts, and under circumstances which afford a peculiar opportunity or temptation for such misconduct. *Advance Rental, supra*. Special relationships include those in which a party entrusts himself to the protection of another and relies on that person to provide a place of safety. Those relationships are usually delineated as innkeeper-guest, common carrier-passenger, school-student, and

sometimes employer-employee. *Id.* All are concerned with providing a physical place of safety. No such special relationship existed between plaintiff and Bell.

Special circumstances include those in which a known dangerous or violent individual is present or where an individual present has conducted himself so as to indicate danger and sufficient time exists to prevent injury. *Id.* The evidence here does not establish special circumstances. Bell was unaware, actually or constructively, of Clark and the attack did not occur on premises of Bell or under its control.

■ In *Brown v. National Supermarkets, Inc.,* 679 S.W.2d 307 (Mo.App.1984) [2, 3], we indicated that a duty to protect may arise from contract undertaking such duty. Plaintiff relies upon that exception here. The difficulty with that contention is that Bell's contract with the City and County did not provide for it to furnish address identification as part of the 911 service. In fact, it offered such service for an additional charge and such offer was declined by both the City and County. It contracted with its customer, City and County, to provide certain services so the customer could furnish the emergency service to its residents. The extent of the emergency service to be rendered was the decision of the customer.

As an accommodation to the City and County, Bell did provide the special services number to the police so that address information could be obtained from a different computer when that computer was in operation. In order to update that computer, used predominately for Bell's repair facility, it was necessary to shut-down the computer for at least two hours every night usually between 1:00 a.m. and 3:00 a.m. Bell's customer, the City and County, was aware of that restriction and on occasions requested that some alternative method be provided to cover those hours. They persistently, however, refused to subscribe to the address locator system offered by Bell. Plaintiff's evidence attempted to show that a cheaper alternative was available as a back-up. Bell presented evidence that for reasons of security of the data

base such an alternative was not feasible. This factual dispute is irrelevant.

Bell fully complied with its contractual obligations to its customer. The duty which it assumed under that contract was fully performed. That it gratuitously provided an additional service for approximately 22 hours per day did not constitute an assumption of a duty to provide such service for the additional two hours when the computer by necessity was shut down. Bell had no common law duty to plaintiff and it assumed no duty to her by contract to protect her from the assault which she suffered.

Plaintiff relies upon *DeLong v. County of Erie,* 60 N.Y.2d 296, 469 N.Y.S.2d 611, 457 N.E.2d 717 (1983). That case also involved a 911 emergency service operation and upheld liability against the municipalities involved for negligent processing of and response to the victim's emergency call. The victim was killed as a result of a burglary. We find the case distinguishable for two reasons. Initially, it premised liability on the negligence in processing and responding to the call by the municipalities whose employees violated their own internal procedures. It did not involve the supplying of equipment and services by the telephone company. Secondly, it found the existence of a special circumstance because the call was accepted and the victim was assured that help was on the way. This caused, the court speculated, the victim to take no further action to escape or otherwise protect herself. This concept is similar to that taken in Sec. 323, Restatement 2d, Torts, which premises liability in undertaking services to protect another upon failure to exercise reasonable care to perform the undertaking if (a) such failure increases the risk or (b) the harm results from reliance on the undertaking. The record before us is clear that the plaintiff was not aware that a 911 call had been made, she did not rely on such a call, and escape or protection was not possible in any event. Further, the availability or unavailability of the 911 system did not increase the risk to plaintiff of an attack by Clark.

We note one other aspect of the case. Plaintiff has relied much on the fact that

this was an emergency service and that as a result Bell had greater obligations than would normally be true in furnishing its service. Whatever the merits of that contention the evidence establishes that Bell was never made aware of the nature of the emergency. The 911 service attracts many different types of calls of varying seriousness. When the complaint evaluator called the special services number, his only statement was, "Thank you" after being told the computer was down. He testified that the special services operator hung up as soon as she made the statement. No attempt was made to bring to the attention of that operator or anyone else at Bell the seriousness of the emergency. No special request for help was made other than the single call to the special services operator. Bell was therefore unaware of the plaintiff's situation, that her telephone was unlisted, and that the evaluator was unable to obtain the address except through Bell. We have found no duty of Bell in any event, but certainly it had no duty to plaintiff when it had no knowledge of her plight or that a plight even existed. The trial court was correct in directing a verdict on the counts seeking recovery against Bell.

JUDGMENT AFFIRMED.

KAROHL, P.J., and KELLY, J., concur.