Stephen M. JOHNSON, Appellant,

v.

GMAC MORTGAGE CORPORATION, et al.; Defendant,

GMAC Bank, Respondent.

No. WD 63822.

Missouri Court of Appeals, Western District.

Feb. 22, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 2005.

Application for Transfer Denied May 31, 2005.

Loren W. Moll, Overland Park, KS, for appellant.

Charles W. German, Kansas City, MO, for Respondent & Defendant.

Before LISA WHITE HARDWICK, P.J., ROBERT G. ULRICH and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

This appeal stems from a failed mortgage loan refinancing transaction. Mr. Stephen M. Johnson contends that respondents GMAC Bank (GMAC) and GMAC Mortgage Corporation (Mortgage Corporation) violated the federal Truth in Lending Act (TILA) and that he properly exercised his right to rescind the loan agreement, triggering their duty to return his money to him and to release the deed of trust over the property. The trial court dismissed all of Mr. Johnson's claims for relief against respondents, and he now appeals from that judgment of the trial court.

We conclude that Mr. Johnson's TILA claims are not barred by the applicable statute of limitations because these claims relate back to his previous pleadings. We also conclude that Mr. Johnson stated a claim for relief against respondents in the declaratory judgment, quiet title, and conversion counts of his second amended petition. The trial court's decision is reversed and remanded for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 7, 2002, Mr. Johnson filed a petition against Mortgage Corporation, GMAC, Advantage Investors Mortgage (AIM), and Darrell G. Jarman. In his petition, Mr. Johnson alleged that he had received a mailing from AIM in February 2002 that advertised AIM's mortgage lending and refinancing services. Mr. Johnson alleged that he responded to the mailing because he was interested in refinancing his house and paying off first and second mortgage loans on the house. Mr. Johnson alleged that AIM never furnished him with any written estimate of the interest rate, monthly payment, applicable fees and the like, but that AIM did make several verbal representations: that the interest rate on the new loan would not exceed 6.5%; that the monthly payment would not exceed $1,102; and that the "[f]ees and closing costs would not exceed normal and customary charges."

Mr. Johnson further alleged that he appeared for closing on March 28, 2002, only to learn the following: that the lender would not be AIM but GMAC; that the loan actually carried an interest rate of 7.375%; that the monthly payment actual-

ly would be $1,268.43; and that fees and points would exceed $8,000. Mr. Johnson alleged that he had "no interest in proceeding with the deal" at this point, but went ahead and signed the loan documents. He further alleged that he decided to cancel the loan the very next day, signing the cancellation notice that day, sending it via FedEx to the address shown on the cancellation notice, and confirming that it had been delivered to GMAC on April 1, 2002.

Mr. Johnson alleged that his cancellation of the loan voided the deed of trust and the loan agreement under the applicable truth in lending laws, but that GMAC ignored his cancellation notice, proceeded to pay off his previous first and second mortgages, and then recorded the deed of trust, despite his efforts to contact GMAC and resolve the situation. He further alleged that a GMAC representative demanded payment on the loan and threatened that his credit would be harmed if he failed to pay, so he agreed to make payment on the GMAC loan.

Mr. Johnson asserted eight claims in his original petition: a claim for fraud against AIM and Jarman (count one); a claim for fraud against GMAC and Mortgage Corporation (count two); a claim for violations of the Missouri Merchandising Practices Act against AIM, GMAC, and Mortgage Corporation (count three); a claim for slander of title against GMAC (count four); a claim for declaratory judgment against GMAC (count five); a claim for prima facie tort against AIM, GMAC, and Mortgage Corporation (count six); a claim for conversion against GMAC (count seven); and a claim for punitive damages against all of the defendants (count eight).

On December 3, 2002, Mr. Johnson filed a first amended petition. The first amended petition added a claim against GMAC for failure to release the deed of trust (count nine), but was otherwise identical to the original petition.

Mortgage Corporation and GMAC then moved to dismiss counts two through nine of Mr. Johnson's first amended petition for failure to state a claim. The circuit court granted the motion for reasons that will be addressed as pertinent below. The court further granted Mr. Johnson leave to file an amended petition.

On July 21, 2003, Mr. Johnson filed a second amended petition. In that petition Mr. Johnson did not reassert his claims for fraud, slander of title, prima facie tort, punitive damages, and release of the deed of trust. Instead, he added claims against AIM and GMAC for violations of TILA (counts one and two) and a claim against GMAC to quiet title (count four). In his TILA counts, Mr. Johnson requested damages for the TILA violations. He also revised his claims for declaratory judgment (count five) and conversion (count six) against GMAC. He revised his Missouri Merchandising Practices Act claim (count three) by dropping Mortgage Company and GMAC from that claim.

GMAC filed a motion to dismiss counts two, four, five, and six of Mr. Johnson's second amended petition. The trial court granted the motion in its entirety.[1]

Mr. Johnson raises five points on appeal. First, he argues that the trial court erred in dismissing his first and second amended

---

1. According to the trial court's judgment granting the motion to dismiss, Mr. Johnson voluntarily dismissed his claims against AIM, disposing of counts one and three of his second amended petition. The trial court's judgment further reveals that, defendant Darrell Jarman had failed to file an answer but that Mr. Johnson had not sought a default judgment against Mr. Jarman.

petitions because he stated a claim for relief under TILA. Second, he argues that he stated a claim for declaratory judgment in his first and second amended petitions based upon violations of TILA. Third, he argues that he stated a claim to quiet title in his second amended petition based upon violations of TILA. Fourth, he argues that he stated a claim for violations of TILA in his second amended petition because those allegations related back to the filing of his first amended petition so that the statute of limitations does not bar what otherwise would be untimely TILA claims. And fifth, he argues that he stated a claim for conversion in his first and second amended petitions because GMAC was not entitled to any payment under TILA and he made payments to GMAC for a specific purpose but GMAC diverted those payments to another use.

## II. STANDARD OF REVIEW

This court reviews *de novo* the grant of a motion to dismiss, examining the pleadings to determine whether they invoke principles of substantive law. *See Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 409–10 (Mo.App. W.D.2000). As the Missouri Supreme Court has said:

> A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause of action that might be adopted in that case.

*Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 464 (Mo. banc 2001) (quoting *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 306 (Mo. banc 1993)).

## III. ANALYSIS

### A. Neither Mr. Johnson's Original Petition Nor his First Amended Petition is Properly Before this Court.

█ Before considering Mr. Johnson's points on appeal, this court must determine which pleadings are properly before it for review. In several of his points, Mr. Johnson is asking this court to review the dismissal of both his first and second amended petitions. Respondents argue that this court may not consider any issue pertaining to Mr. Johnson's first amended petition because Mr. Johnson abandoned that pleading when he filed his second amended petition. We agree.

█ By filing an amended pleading, a plaintiff generally abandons his former pleadings and those pleadings may not be considered for any purpose afterward. *Beckmann v. Miceli Homes, Inc.*, 45 S.W.3d 533, 543 (Mo.App. E.D.2001); *see also Lightfoot v. Jennings*, 363 Mo. 878, 254 S.W.2d 596, 597 (1953) (where trial court dismisses some but not all claims in pleading, appeals court cannot consider issues arising from that pleading because they were abandoned by amended pleading and are not appropriately before the court). This rule is valid "when the original pleading and the amended pleading are addressed to the same defendant or arise from a dismissal with leave to amend." *R.C. v. Southwestern Bell Tel. Co.*, 759 S.W.2d 617, 619 (Mo.App. E.D.1988). When a court dismisses a petition with leave to amend, the plaintiff has a choice between standing on the original petition and appealing the dismissal or making the amendment and proceeding to trial on the amended petition. *Id.* Because the plaintiff in this situation has a choice between appealing or amending, "[i]t is reasonable that the pleading a plaintiff elects to go to trial on is the one that forms the basis for appeal." *Id.*

But when "the reason for dismissal is not correctible by an amended pleading and the case remains pending against other defendants, the court and the parties should not be required to engage in useless procedural gestures in order to preserve the propriety of the dismissal for review." *Id.* at 619–20. In that situation, the general abandonment rule does not apply. *Beckmann,* 45 S.W.3d at 543.

Mr. Johnson's second amended petition arises from the trial court's dismissal of counts two through nine of his first amended petition with leave to amend. This is exactly the situation that *R.C.* identifies as proper for application of the general abandonment rule. 759 S.W.2d at 619 ("That rule has validity when the original pleading and the amended pleading are addressed to the same defendant or arise from a dismissal with leave to amend.").

Furthermore, many of the defects cited by the trial court in its dismissal order were at least potentially "correctible." [2] If they were "correctible," then it would not have been "useless" for Mr. Johnson to make corrections to them and re-assert them in his second amended petition. *Cf. Gittemeier v. Contractors Roofing & Supply Co.,* 932 S.W.2d 865, 869 (Mo.App. E.D.1996) ("Gittemeier appeals from summary judgments granted as to four of his claims. Summary judgments are final and may be appealable if so designated. No amendment to Gittemeier's petition could cure the summary judgment order by the trial court."); *Prayson v. Kansas City Power & Light Co.,* 847 S.W.2d 852, 853, 859–60 (Mo.App. W.D.1992) (where trial court concluded that claim for direct liability against power company was barred by case law and where court denied plaintiff's motion for leave to file second amended petition with this count, plaintiffs did not abandon the count by failing to include it in third amended petition, because it would have been a useless procedural gesture to do so since the trial court merely would have denied their motion again based upon its misunderstanding of the case law); *Blum v. Airport Terminal Servs., Inc.,* 762 S.W.2d 67, 71 (Mo.App. E.D.1988) (plaintiffs did not abandon right to appeal trial court's dismissal of decedent's employer from wrongful death action where trial court granted motion to dismiss employer from lawsuit on ground that court lacked subject matter jurisdiction because workers' compensation law furnished the exclusive remedy against the employer and the reason for the dismissal was not correctible by amendment).

Likewise, Mr. Johnson abandoned his original petition by filing his first amended petition. *See, e.g., Welch v. Cont'l Placement, Inc.,* 627 S.W.2d 319, 321–22 (Mo. App. W.D.1982).

We therefore conclude that Mr. Johnson has abandoned his prior pleadings such that they cannot be considered for any purpose here. Accordingly, we review only the dismissal of Mr. Johnson's second amended petition.

**B. The Doctrine of "Relation Back" Saves the TILA Claims in Mr. Johnson's Second Amended Petition from the Bar of the Statute of Limitations**

In his fourth point, Mr. Johnson argues that the trial court erred in dismissing the

**2.** Based upon the reasoning employed by the trial court in its dismissal order, counts two, four, five, and nine were correctible. In dismissing each of those counts, the court identified what it believed to be necessary elements or facts that Mr. Johnson had failed to allege, suggesting that if he were able to allege those elements or facts in an amended petition, the problems might be correctible. On the other hand, the reasons given by the court for dismissing counts three, six, seven, and eight suggest that those counts were not correctible.

TILA claims in his second amended petition because those claims "related back" to the filing of his original petition and his first amended petition and, therefore, were not barred by the statute of limitations. Because this point could be dispositive, we address it first.

The parties agree that TILA claims are subject to a one-year statute of limitations. *See* 15 U.S.C. § 1640(e) ("Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."). The parties further agree that Mr. Johnson's TILA claims in this case would be untimely unless they "relate back" to the filing of the original petition or the first amended petition.[3]

■ Rule 55.33(c)[4] sets forth the doctrine of "relation back" in this state. In pertinent part, it says: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." This rule abrogates the old "same evidence" and "theory of law" tests in favor of the "conduct, transaction, or occurrence" test. *Mogley v. Fleming*, 11 S.W.3d 740, 750 (Mo.App. E.D.1999). "The language, 'conduct, transaction or occurrence,' as used in Rule 55.33(c), is accorded broad and liberal con-

struction." *Id.* (internal quotation marks and citation omitted).

Citing cases involving pleading and relation back under the wrongful death statute, respondents argue that the claims do not relate back here given the trial court's ruling that Mr. Johnson's first amended petition did not state a cause of action against GMAC. And respondents further argue that Mr. Johnson cannot now challenge the trial court's ruling on the first amended petition here because—as noted already—he abandoned his first amended petition when he filed his second amended petition. *See Butler v. Circulus, Inc.*, 557 S.W.2d 469, 481–82 (Mo.App.1977).

■ We agree that Mr. Johnson cannot challenge the trial court's ruling as to the claims raised in his original and first amended petitions; we do not agree, however, that his TILA claim cannot relate back. While *Smith v. Tang*, 926 S.W.2d 716, 719 (Mo.App. E.D.1996), states that "[a]n amendment will relate back to the original petition so as to save the action from the statute of limitations only when the original plaintiff had the legal right to sue and stated a cause of action at the time the suit was filed," this principle is derived from a line of cases whose initial pleadings were filed under the wrongful death statute by plaintiffs who had no right to maintain the action, had no standing to sue under the statute, and were not parties authorized to sue under the strict wording of the statute. *See State ex rel. Jewish*

---

3. Mr. Johnson's second amended petition does not seek rescission of the transaction. Instead, it seeks damages for respondents' alleged TILA violations. This is an important distinction because rescission actions are governed by a separate three-year limitations period. *See* 15 U.S.C.A. § 1635(f). Claims for damages arising from TILA violations, on the other hand, are governed by the one-year limitations period in 15 U.S.C.A. § 1640(e), which both parties agree applies here. Mr.

Johnson contends that the violations of TILA occurred between February 12, 2002, and June 17, 2002. Mr. Johnson concedes that he did not file his second amended petition—asserting the TILA claims—until July 21, 2003, over one year after the occurrence of the alleged violations.

4. Unless otherwise indicated, all rules refer to Missouri Court Rules (2004).

*Hosp. of St. Louis v. Buder,* 540 S.W.2d 100, 107 (Mo.App.1976); *see also Nelms v. Bright,* 299 S.W.2d 483, 487 (Mo. banc 1957) (stating that "[a] party suing under the [wrongful death] statute ... must bring himself in his pleading and proof strictly within the statutory requirements necessary to confer the right. Otherwise his petition states no cause of action, and his proof is insufficient to sustain his judgment."). The focus in such cases is on the plaintiff and his or her ability to bring the action in the first place. Without the authority conferred by the wrongful death statute, there is no cause of action.

Here, Mr. Johnson did have the authority to file his claims, and his ability to do so is not subject to conditions imposed by the legislature as they are with respect to an action for wrongful death. That a court subsequently determined he had no cause of action on the basis of the allegations in his pleading is entirely distinguishable. We are mindful that our supreme court construes relation back liberally and that Rule 55.33(c) is derived from Rule 15(c) of the Federal Rules of Civil Procedure, which "is based on the concept that a party who is notified of litigation concerning a given transaction or occurrence has been given all the notice that statutes of limitations are intended to afford." *Koerper & Co., Inc. v. Unitel Int'l, Inc.,* 739 S.W.2d 705, 706 (Mo. banc 1987) (internal quotation marks and citations omitted). The *Koerper* case overruled *Miller v. Werner,* 431 S.W.2d 116 (Mo.1968) and implicitly rejected the analysis of Rule 55.33(c) as announced in *Welch,* 627 S.W.2d at 321–22, which followed the old analysis under cases like *Miller.* We also note that long before Rule 55.33(c) was adopted, we had a general doctrine that amended petitions relate back to the filing of the original petition, regardless of whether the original petition has been abandoned.[5] In *Philip Gruner & Bros. Lumber Co. v. Hartshorn–Barber Realty & Bldg. Co.,* 171 Mo.App. 614, 154 S.W. 846, 851 (1913), we observed that the doctrine was a legal fiction that should be resorted to for the promotion of justice and the lawful intention of the parties, "by giving effect to acts or instruments which, without it, would be invalid." *Id.*

Accordingly, we need only determine whether Mr. Johnson's TILA claims arose from the conduct, transaction, or occurrence outlined in his original and first amended petitions. Mr. Johnson brought suit in September 2002, mere months after the transaction giving rise to his claims arose. In that petition, Mr. Johnson alleged that his cancellation of the loan was made under "applicable truth in lending laws." It cannot be said that respondents

---

**5.** In *Welch,* 627 S.W.2d at 321, this court, applying the abandonment doctrine, determined that a claim advanced out of time in an amended petition could not relate back so as to save the claim from the statute of limitations. We relied on language in several cases indicating that an abandoned petition may not be considered for any purpose, but failed to consider that those cases did not involve statute of limitations issues. Moreover, the cases cited in *Welch* were based themselves on cases that, while recognizing the abandonment doctrine, also recited that "the amended petition relates back to the institution of the suit." *State ex rel. Fechtling v. Rose,* 239 Mo.App. 178, 189 S.W.2d 425, 428 (1945). *See also Cindrick v. Scott,* 226 Mo.App. 153, 42 S.W.2d 957, 959 (1931) ("When plaintiff filed his amended petition, he necessarily abandoned the first petition and the case was for trial on such amended petition ..., and such amended petition related back to the institution of the suit.") (internal citations omitted); and *Philip Gruner & Bros. Lumber Co. v. Hartshorn–Barber Realty & Bldg. Co.,* 171 Mo.App. 614, 154 S.W. 846, 851 (1913) ("[T]he general doctrine seems to be established that the amended petition relates back to the filing of the original petition.").

lacked the notice that statutes of limitation are intended to afford.

## C. Mr. Johnson's Second Amended Petition Stated a Claim for Relief by Way of Declaratory Judgment

■ Mr. Johnson's first amended petition requested that the trial court issue a judgment "declaring that the deed of trust mortgage lien is void and that the instrument is of no legal force or effect." When the trial court dismissed this count it found that Mr. Johnson had failed to state a claim because he had not alleged "that he has tendered or offered to tender back the money GMAC Bank paid toward the prior mortgage loans" and that "[t]his is a necessary element of a claim to rescind." Mr. Johnson then filed his second amended petition, in which he re-asserted a count for declaratory judgment, requesting that the court issue a judgment "declaring the rights of the parties in and to the security instrument [with GMAC]." When the trial court dismissed this count, it found that it "attempts to restate the plaintiff's previously dismissed count for rescission by renaming it as a cause for declaratory judgment" and that "[a]s such, tender is still an essential element of the plaintiff's claim that remains unstated."

Mr. Johnson contends that the trial court erred in dismissing these counts of his first and second amended petitions because he was not seeking the equitable remedy of rescission but a declaration of what rights, if any, GMAC had under the deed of trust.

Respondents, on the other hand, contend that Mr. Johnson's first amended petition is not properly before this court, having been abandoned, and that neither the first amended petition nor the second amended petition alleged sufficient facts to state a claim that the deed of trust was void, because a lender is not required to release a deed of trust unless the borrower tenders or offers to tender repayment of the benefits received.

We have already determined that Mr. Johnson's first amended petition is not before this court. Therefore, the question before us is solely whether Mr. Johnson has stated a claim for declaratory relief in his second amended petition. Neither party has furnished this court with any helpful authority to determine whether the declaratory judgment count in the second amended petition states a claim for relief.

Respondents simply argue that "the majority of cases ... hold that a creditor is not required to release its security interest upon receiving a notice of rescission unless the obligor tenders or offers to tender repayment." *Riopta v. Amresco Res. Mortgage Corp.*, 101 F.Supp.2d 1326, 1331 (D.Hawai'i 1999). This may be true, but it is not the same thing as saying that Mr. Johnson must plead tender or an offer of tender to maintain his declaratory judgment action.

15 U.S.C.A. 1635(b) governs the process of unwinding this transaction. It says:

*When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the*

creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C.A. § 1635(b) (emphasis added).

■ Although the security interest "becomes void" upon rescission, the first circuit has explained that a lender need not relinquish its interest until an "appropriate decision maker" has determined that proper grounds for rescission actually exist:

> Neither the statute nor the regulation establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract. Section 1635(b) states that, "[w]hen an obligor exercises his right to rescind," the creditor's security interest "becomes void." The natural reading of this language is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined.

*Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54–55 (1st Cir.2002).

Otherwise, "a borrower could rescind a transaction without any statutory justification simply by alleging that the statutory requirements for rescission had been met."

*Id.* at 55. But this does not mean that the borrower must plead tender to maintain his action; it merely means that if the borrower does not tender, then the lender does not have to release the security interest until a court can determine whether statutory grounds for rescission actually exist.

Mr. Johnson alleges that he duly notified GMAC of his rescission within three days but that GMAC never acknowledged that he had exercised his right to rescind and never took the action necessary to reflect termination of the security interest. Indeed, Mr. Johnson alleges that GMAC recorded the security interest despite his notice of rescission. Mr. Johnson further alleges that GMAC violated TILA's disclosure provisions. This court must accept these allegations as true for purposes of determining whether Mr. Johnson stated a claim for relief. *See Bosch,* 41 S.W.3d at 464.

Accepting these allegations as true, we conclude that Mr. Johnson has stated a claim for declaratory relief here.

■ We are not persuaded by respondents' arguments to the contrary that Mr. Johnson must plead tender or an offer of tender. At common law, tender by the borrower is indeed a prerequisite to stating a claim for rescission. *Williams v. Homestake Mortgage Co.,* 968 F.2d 1137, 1140 (11th Cir.1992). Under TILA, however, this is not true:

> The sequence of rescission and tender set forth in § 1635(b) is a reordering of common law rules governing rescission.... Under § 1635(b), ... all that the consumer need do is notify the creditor of his intent to rescind. The agreement is then automatically rescinded and the creditor must, ordinarily, tender first. Thus, rescission under § 1635 place[s] the consumer in a much stronger-

er bargaining position than he enjoys under traditional rules of rescission. . . . Furthermore, because rescission is such a painless remedy under the statute (placing all burdens on the creditor), it acts as an important enforcement tool, insuring creditor compliance with TILA's disclosure requirements.

*Id.* (internal citation and quotation marks omitted); *see also Large*, 292 F.3d at 55 ("Rescission under the TILA is 'automatic' in the sense that, in contrast to common law rescission, the borrower need not first return the loan proceeds received under the agreement to effect a rescission.").

▮ Under TILA, therefore, "the tender back of consideration received is not a prerequisite to rescission. Section 1635(a) requires only that the obligor exercise his right of rescission by notifying the creditor within the prescribed time limit of his intent to rescind." *Rachbach v. Cogswell*, 547 F.2d 502, 505 (10th Cir.1976).

▮ This is not to say that the trial court lacks the power to condition an order of rescission upon tender by the obligor. As respondents point out, numerous courts have held that the courts may condition an order of rescission upon such tender. *See, e.g., Fed. Deposit Ins. Corp. v. Hughes Dev. Co.*, 938 F.2d 889, 890 (8th Cir.1991) ("TILA generally provides that the creditor shall perform first (i.e., return monies paid by the debtor and release its security interest); however, the Act gives courts discretion to devise other procedures, including conditioning rescissions upon the debtor's prior return of the principal." (citation omitted)); *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1171 (9th Cir. 2003) (indicating that ninth circuit has recognized trial court's discretion to so condition rescission); *Riopta*, 101 F.Supp.2d at 1331–32, 1334–35 (borrowers not entitled to summary judgment on claims that lender violated TILA by refusing to release its

security interest upon receiving notice of rescission because majority of cases "hold that a creditor is not required to release its security interest upon receiving a notice of rescission unless the obligor tenders or offers to tender repayment" and courts have authority to condition grant of rescission upon such tender if equity requires it).

This power reflects another goal of the statutory rescission process:

to return the parties most nearly to the position they held prior to entering into the transaction. The addition of the last sentence of § 1635(b), stating that "[t]he procedures prescribed by this subsection shall apply except when otherwise ordered by a court," . . . is a reflection of this equitable goal.

*Williams*, 968 F.2d at 1140.

Nor is it to say that the trial court may not determine whether proper grounds exist for termination after the borrower has notified the lender of the exercise of the right to rescind but before the court grants the remedy of rescission. *See, e.g., Large*, 292 F.3d at 55–56 ("Rescission under the TILA is 'automatic' in the sense that, in contrast to common law rescission, the borrower need not first return the loan proceeds received under the agreement to effect a rescission. . . . Contrary to what the Larges suggest, however, the use of the word 'automatic' in *Williams* presupposes that the grounds for rescission have been established, either by agreement or by an appropriate decision maker.").

Also, the respondents have not identified any authority requiring the borrower to plead—in the first instance—that the borrower has tendered or offered to tender. *Cf. Quenzer v. Advanta Mortgage Corp.*, 288 B.R. 884, 888 (D.Kan.2003) (tender may "may be an appropriate condition attached thereto under certain circum-

stances because of the equitable nature of the statutory remedy" but it is "not mandated" as a prerequisite to rescission).

All of this is consistent with the manner in which the Missouri Supreme Court has interpreted a previous version of TILA. *See Ehlert v. Ward*, 588 S.W.2d 500 (Mo. banc 1979). In that case the borrower sought to rescind her credit transaction for sundry violations of TILA and accompanying regulations. *Id.* at 501. Based upon these violations, the Missouri Supreme Court held that the borrower "was entitled to rescind the credit transaction" and that the trial court "erred in not granting her the requested relief of rescission, including the return of all monies paid by her to respondent and the cancellation of the promissory note and the deed of trust upon her property." *Id.* at 503. The court simply concluded that the trial court could condition the granting of such relief upon the tender of the principal proceeds of the loan. *Id.* at 504. *Ehlert* does not require the borrower to plead tender in a TILA action, however.

Likewise, none of the other cases cited by respondents require the borrower to plead tender or an offer of tender to be entitled to exercise the right of rescission. Like *Ehlert*, they merely hold that the courts may condition the grant of rescission upon tender. *See Yamamoto*, 329 F.3d at 1171; *Large*, 292 F.3d at 55; *Fed. Deposit Ins. Corp.*, 938 F.2d at 890; *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 254 (6th Cir.1980) ("Since Congress clearly intended to give a right to rescind to persons in appellants' situation, this Court feels it must grant them that right. However, since appellants have kept the aluminum siding, this Court feels that appellants should tender the reasonable value of the property they received since they cannot give back what they actually received.... The rescission and return of monies paid to appellee is thus conditioned upon the return to appellee by appellants the reasonable value of the property received."); *Riopta*, 101 F.Supp.2d. at 1331–32, 1334–35.

Or they hold that a lender does not forfeit its rights to the property until the borrower first tenders the proceeds. *See Mayfield v. Vanguard Sav. & Loan Ass'n*, 710 F.Supp. 143, 148 (E.D.Pa.1989) (holding that borrower was entitled to rescind loan agreement based upon lender's violations of TILA but that lender would not be deemed to have forfeited proceeds of loan absent tender by the borrower); *Bustamante v. First Fed. Sav. & Loan Ass'n*, 619 F.2d 360, 365 (5th Cir.1980) (dealing with TILA forfeiture provision and holding that the forfeiture provision is not triggered without tender by borrower). This is consistent with the language of the statutory forfeiture provision, which says, "If the creditor does not take possession of the property within 20 days *after tender by the obligor,* ownership of the property vests in the obligor without obligation on his part to pay for it." 15 U.S.C.A. § 1635(b) (emphasis added). Thus, while tender by the borrower may not be a prerequisite to exercising the right to rescind, it does appear to be a prerequisite to forfeiture.

Forfeiture is not the issue presented here, however. The issue presented here is simply whether Mr. Johnson has pled enough to entitle him to a declaration of rights in the security instrument. Because that is the issue and because the court may condition any decision requiring respondents to release the security interest upon tender if equity demands it, respondents' concerns about Mr. Johnson obtaining a "windfall" or a "free house" are misplaced. The trial court can address those concerns. *See, e.g., Ray v. Citifinancial, Inc.*, 228 F.Supp.2d 664, 667

(D.Md.2002) ("Within the meaning of the law, 'rescission' does not mean an annulment that is definitively accomplished by unilateral pronouncement. Rather, it contemplates a remedy that restores the *status quo ante*. If a party has a legal or equitable right to annul a transaction, he may do so, but only upon returning any benefit he has received.").

### D. Mr. Johnson Stated a Claim to Quiet Title

In his second amended petition, Mr. Johnson added a count for quiet title against GMAC. In that count, he alleged that GMAC might claim some right, title or interest in his property under the deed of trust. He further alleged that GMAC's security interest in his property was void because of his "valid and lawful cancellation of the loan" under TILA. He asked the court to quiet title to the property in him, free of any claim by GMAC.

The trial court dismissed this count as well because the court found that "Defendant GMAC has not asserted a claim to a fee title interest but rather relies on a lien interest based on valid consideration."

Section 527.150 [6] governs quiet title actions. It says:

1. Any person claiming any title, estate or interest in real property, whether the same be legal or equitable, certain or contingent, present or in reversion or remainder, whether in possession or not, may institute an action against any person or persons having or claiming to have any title, estate or interest in such property, whether in possession or not, to ascertain and determine the estate, title and interest of said parties, respectively, in such real estate, and to define and adjudge by its judgment or decree the title, estate

and interest of the parties severally in and to such real property.

2. And upon the trial of such cause, if same be asked for in the pleadings of either party, the court may hear and finally determine any and all rights, claims, interest, liens and demands, whatsoever of the parties, or of any one of them, concerning or affecting said real property, and may award full and complete relief, whether legal or equitable, to the several parties, and to each of them, as fully and with the same force and effect as the court might or could in any other or different action brought by the parties, or any one of them, to enforce any such right, claim, interest, lien or demand, and the judgment or decree of the court when so rendered shall be as effectual between the parties thereto as if rendered in any other, different or separate action prosecuted therefore.

§ 527.150.

■■■ Contrary to the trial court's ruling, it should not matter that GMAC "has not asserted a claim to a fee title interest" because section 527.150 does not apply just to fee title interest but to any "interest" in such property. And section 527.150.2 further specifically mentions "liens."

■■■ Nonetheless, respondents maintain that Mr. Johnson likewise has failed to state a claim for relief on his quiet title claim because he has not alleged either tender or an offer of tender. Respondents reason that GMAC had no duty to release the deed of trust until Mr. Johnson either tendered or offered to tender repayment, and, therefore, Mr. Johnson cannot show that GMAC's interest was invalid.

The parties agree that Mr. Johnson's quiet title claim is very similar to his declaratory judgment claim. Indeed, the

6. Unless otherwise indicated, all statutory references are to RSMo. (2000).

Missouri Supreme Court has said that the judgment in a quiet title action under section 527.150 is "essentially a declaratory judgment and such actions impose on the court the same duty, namely to make a declaration of rights regardless of which party is entitled to it." *Evans v. Brussel,* 300 S.W.2d 442, 444 (Mo.1957); *see also Winter v. Northcutt,* 879 S.W.2d 701, 706 (Mo.App. S.D.1994) (citing *Evans* and suggesting that "there may be little, if any, difference between an action to quiet title and an action for declaratory judgment.").

Thus, the analysis of Mr. Johnson's quiet title claim is substantially the same as the analysis of his declaratory judgment claim. For the same reason that we conclude Mr. Johnson has stated a claim for declaratory relief, we likewise conclude that he has stated a claim to quiet title. Mr. Johnson has alleged that GMAC violated TILA and he has alleged that he duly rescinded the loan agreement. When a borrower exercises his right to rescind under TILA, "any security interest given by ... [him], including any such interest arising by operation of law, becomes void upon such a rescission." 15 U.S.C.A. § 1635(b). And within twenty days after receiving notice of rescission, the lender must—among other things—"take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." *Id.* The borrower's obligation to tender does not arise until the lender has fulfilled its obligations. *Id.*

As they do in their discussion of the declaratory judgment count, respondents contend that GMAC had no duty to release the deed of trust until Mr. Johnson agreed to tender. That may be true, but it also misses the point. The courts that have so ruled have not held that a borrower fails to state a claim for relief if he does not allege tender. They have simply held that a

lender need not release its security interest until a court has an opportunity to determine whether the borrower actually has asserted statutory grounds for rescinding the loan agreement. *See Riopta,* 101 F.Supp.2d at 1331; *Large,* 292 F.3d at 54–55.

Thus, if Mr. Johnson asserted proper statutory grounds for rescission here, then GMAC's security interest would be void and the trial court would be obligated to quiet title in favor of Mr. Johnson. *See Stottle v. Brittian,* 459 S.W.2d 310, 313 (Mo.1970). We therefore conclude that Mr. Johnson has alleged facts putting GMAC's security interest in issue based upon his claim that he rescinded the loan agreement after GMAC violated TILA. *Cf. State ex rel. Mo. Highway & Transp. Comm'n v. London,* 824 S.W.2d 55, 59 (Mo.App. E.D. 1991) ("If title has been properly put in issue, a judgment of dismissal without determination of title is error. This is true even if plaintiff fails to establish his claim of title. However, an adjudication of title must be based upon some evidence sufficient to put title in issue.") (internal citations omitted).

### E. Mr. Johnson Stated a Claim for Conversion

Mr. Johnson's first amended petition included a count for conversion alleging that GMAC "used threats and coercion to obtain two payments" from him, that at the time GMAC did so it "was aware that [he] did not owe money to GMAC" and that he paid the money to GMAC for a specific purpose but that GMAC "converted the money to its own use." When it dismissed this count, the trial court said that "[a] claim for conversion of money is generally improper" and that "[a]n exception exists 'in narrow circumstances' where 'the plaintiff [has] delivered funds to the defendant for a specific purpose and the defendant [has] diverted them for another and differ-

ent purpose of the defendant.'" (quoting *Knight v. M.H. Siegfried Real Estate, Inc.,* 647 S.W.2d 811, 817 (Mo.App. W.D.1982)).

Mr. Johnson's second amended petition included a revised count for conversion, alleging that he had "paid money to GMAC at the specific request of GMAC and upon representations made by GMAC that he was making payments on his account," that at the time GMAC made its requests and representations, GMAC "was aware that [he] did not owe money to GMAC under the terms of the loan that [he] had timely and lawfully cancelled pursuant to his rights under [TILA] and that [he] did not have an account with GMAC," that he paid money to GMAC "for his escrow payments and the money was to be used for the payment of real property taxes and home owner's insurance premiums" and that "GMAC did not establish an escrow account, failed to credit the money to any escrow account and instead converted the money to its own use." The court dismissed this count as well, finding that Mr. Johnson "has yet failed to plead tender of the proceeds to defendant GMAC in an effort to rescind the transaction" and that "[t]he failure to effect tender causes plaintiff's Second Amended Petition in that regard to be fatally defective."

Mr. Johnson contends that the trial court erred in dismissing these counts because "the facts state a claim for conversion in that under TILA, the defendant was not entitled to any payment, and the plaintiff paid money to the defendant to fund an escrow account and the defendant never established an escrow but rather took the money for its own use and purposes; tender is not a precondition for plaintiff's recovery under a conversion theory."

As with many of his other claims, Mr. Johnson has abandoned the conversion claim in his first amended petition by replacing it with a new conversion claim in his second amended petition, which was filed with leave of the court. We therefore review only the dismissal of the conversion claim in his second amended petition.

■ As the trial court recognized and as the parties agree, conversion generally is not a proper theory where the claim involves money, as opposed to a specific chattel. *See Biermann v. Gus Shaffar Ford, Inc.,* 805 S.W.2d 314, 318 (Mo.App. S.D.1991). As the trial court also recognized and as the parties further agree, this rule is subject to a "narrow exception" in cases where the plaintiff delivers funds to the defendant for a specific purpose only to have the defendant divert those funds to another and different purpose of the defendant. *Knight,* 647 S.W.2d at 817.

■ Mr. Johnson has alleged that he made two payments to GMAC for the specific purpose of funding his escrow account and assuring that taxes and insurance were paid. And he alleges that GMAC failed to establish an escrow account or to credit the money to any escrow account. Although respondents contend that Mr. Jones' purported purpose in making the payments—to fund the escrow account—is at odds with Mr. Johnson's cancellation of the loan agreement, the two positions are not necessarily mutually exclusive: Mr. Johnson could have decided to make the payments even as he sought to rescind the agreement because he saw that GMAC was not taking any action to unwind the agreement and wanted to make sure that the taxes and insurance were paid during the dispute and that his credit was not damaged.

We believe that these allegations are sufficient for a conversion claim. Again, we do not believe that tender is a necessary element of this claim. Mr. Johnson's conversion claim is predicated upon respondents' failure to comply with the statutory requisites of TILA, not the common law. When a borrower rescinds under

TILA, he is "not liable for any finance or other charge" and the lender must return "any money or property given as earnest money, down payment, or otherwise" within twenty days of receiving notice of rescission. 15 U.S.C.A. § 1635(b).

If Mr. Johnson properly exercised his right to rescind in this case, then respondents had no right to receive payment from him and could be subject to liability for converting his money to their own use. Because Mr. Johnson's claim is premised upon respondents' violation of TILA, rather than the common law, we do not believe that Mr. Johnson must plead tender here. That distinguishes his case from the case relied upon by respondents. *See Haas v. Town & Country Mortgage Co.,* 886 S.W.2d 225, 228 (Mo.App. E.D.1994) (where borrower essentially sought rescission of loan agreement at common law, mortgage lender had no duty to refund money until borrowers also tendered title to the property because rescission of contract involves restoration of status quo, unless parties have agreed otherwise, and lender was not liable for conversion), overruled on other grounds by *Bell v. May Dep't Stores Co.,* 6 S.W.3d 871 (Mo. banc 1999).

## IV. CONCLUSION

For the reasons explained above, we reverse the judgment of the trial court dismissing Mr. Johnson's TILA claims and reverse the judgment of the trial court dismissing the declaratory judgment, quiet title, and conversion counts of his second amended petition. The case is remanded for further proceedings consistent with this opinion.

LISA WHITE HARDWICK, P.J., and ROBERT G. ULRICH, J. concur.