**Russell and Jennifer GADBERRY, Appellants,**

v.

**Calvin BIRD and Lacrissa Bird, d/b/a Bird & Associates, Respondents.**

No. ED 86424.

Missouri Court of Appeals, Eastern District, Division Three.

April 4, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 18, 2006.

Jonah T. Yates, Cape Girardeau, MO, for appellant.

Robert Scott Killen, Cape Girardeau, MO, for respondent.

BOOKER T. SHAW, Judge.

Russell and Jennifer Gadberry ("Buyers") appeal from the trial court's judgment in favor of Calvin and LaCrissa Bird d/b/a Bird and Associates ("Broker").[1] Buyers contend they established, as a matter of law, that Broker unlawfully converted $25,000 of their funds through misappropriation and by refusing to return their funds upon demand. We reverse and remand.

### Facts and Procedural History

Buyers attempted to secure a loan to purchase a home in Scott City. They were unable to obtain conventional financing because they were in bankruptcy proceedings. Russell Gadberry ("Gadberry") called his acquaintance Calvin Bird ("Bird"), a mortgage broker, and requested assistance in obtaining financing. At that time, Bird was at a seminar in St. Louis, where John Sanders ("Lender") was the facilitator and keynote speaker on the topic of unconventional or creative financing. Bird spoke with Lender about Buyers' situation and arranged a meeting between Gadberry and Lender at Broker's office in Cape Girardeau, Missouri. At that meeting on March 7, 2003, Lender agreed to lend $100,000 to Buyers.

Broker prepared a mortgage loan commitment for Buyers and Lender. Under the terms of the loan commitment, Buyers were required to pay $25,000 as down pay-

---

**1.** Calvin Bird acted as a mortgage broker for Broker. His sister LaCrissa Bird was the branch manager for Broker. The record before us indicates that Broker is registered as a fictitious name with the Secretary of State. It does not appear to be a corporation or other recognized entity in Missouri.

ment on the property. Gadberry wrote a $25,000 check to "Bird and Associates" with the notation "Down Payment On House Hwy PP outer North." Bird testified that Gadberry wrote the check to Broker because Broker was "to be a pass-through" to ensure that Buyers' check cleared. Bird further testified "[t]he check was made to me because [Lender] did not have any accounts here and the money was going to be sent to his account, which he represented to be his escrow account ... and that's what we were going to do." Bird admitted that Buyers were unaware of his plan to transfer their funds to Lender's account. The following day, Broker transferred $17,000 into Lender's account. Of the remaining $8,000, Broker gave $5,000 in cash to Lender, and Broker retained $3,000 as his fee. Broker admitted that he took "a risk" by giving $5,000 of Buyer's funds to Lender in cash, but he did so because he believed that Lender was reputable.

Lender never performed on the mortgage loan commitment. In May 2003, Lender disappeared. After repeated unsuccessful attempts to contact Lender, Buyers asked Broker to return their $25,000. At that time, Buyers learned that Broker no longer held their funds. Buyers filed suit for breach of contract, fraudulent misrepresentation, conversion and breach of escrow against Broker and Lender for the return of their $25,000.[2] Buyers were unable to locate Lender to serve him, so the trial court dismissed Buyers' suit against him without prejudice. After a bench trial, the trial court issued a judgment in favor of Broker. This appeal follows.

### Analysis

In a court-tried case, we may only reverse the trial court's judgment if there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Walker v. Hanke,* 992 S.W.2d 925, 930 (Mo.App. W.D.1999). We accept all of the evidence and inferences favorable to the prevailing party and disregard all contrary evidence. *Chapman v. Lavy,* 20 S.W.3d 610, 612 (Mo.App. E.D.2000). Where there is conflicting testimony, the trial court has broad discretion to determine the credibility of the witnesses, and we defer to the trial court's determination, even if there is evidence which would support a different conclusion. *Collins v. Trammell,* 911 S.W.2d 635, 638 (Mo.App. E.D.1995).

Conversion may be proved in three ways: "(1) by tortious taking; (2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the owner's rights; or (3) by refusal to give up possession to the owner on demand, even though the defendant's original possession of the property was proper." *Walker,* 992 S.W.2d at 930. Conversion is not generally a proper theory when a claim involves money. *Johnson v. GMAC Mortg. Corp.,* 162 S.W.3d 110, 125 (Mo.App. W.D.2005). "Money represented by a general or ordinary debt is not subject to a claim for conversion ... As a general rule a claim for money may not be in conversion because conversion lies only for a specific chattel which has been wrongfully converted." *In re Estate of Boatright,* 88 S.W.3d 500, 506 (Mo.App.S.D.2002) (citations omitted). However, misappropriated funds placed in the custody of another for a definite purpose may be subject to a suit for conversion, when the plaintiff delivers

**2.** At the end of the trial, Buyers conceded to the trial court that they had not proven breach of contract and fraudulent misrepresentation against Broker.

funds to the defendant for a specific purpose, and the defendant diverts those funds to another, different purpose. *Johnson*, 162 S.W.3d at 125; *Brandhorst v. Carondelet Sav. & Loan Ass'n*, 625 S.W.2d 696, 699 (Mo.App. E.D.1981).

Because Broker diverted $8,000 of Buyers' $25,000 for a purpose other than Buyers' specific purpose of purchasing the Scott City home, the trial court misapplied the law when it determined these facts did not establish conversion.[3] The trial court's judgment is reversed. We remand this cause and order the trial court to enter judgment in favor of Buyers in the amount of eight thousand dollars ($8,000).

REVERSED AND REMANDED.

KATHIANNE KNAUP CRANE, P.J., and LAWRENCE E. MOONEY, J., Concur.

---

**3.** In the alternative, Buyers argued that Broker unlawfully converted their funds by refusing to return them upon demand. However, in order for refusal on demand to be a basis for conversion, "it must appear that the property was in the defendant's possession at that time, or so far under the defendant's control as to permit compliance with the demand when made." 90 C.J.S. Trover and Conversion, section 46 (2005).