**CORNERSTONE MORTGAGE, INC., Respondent,**

v.

**Kurt W. PONZAR and Sandra L. Ponzar, Appellants.**

**No. ED 89442.**

Missouri Court of Appeals, Eastern District, Division Two.

May 27, 2008.

Daniel Goldberg, St. Charles, MO, for Appellants.

Michael Campbell, Ryan Mason, Co-Counsel, St. Louis, MO, for Respondent.

NANNETTE A. BAKER, Judge.

### Introduction

Kurt W. Ponzar ("Mr. Ponzar") and Sandra L. Ponzar ("Mrs. Ponzar") (Collectively, "Ponzars") appeal from a grant of summary judgment in favor of Cornerstone Mortgage, Inc. ("Cornerstone") in the Circuit Court of St. Charles County. The primary issue before this court is whether the Ponzars properly rescinded the mortgage loan they received from Cornerstone. We affirm in part and reverse and remand in part.

### Factual and Procedural Background

The Ponzars owned a home in Weldon Spring, Missouri. As of January 19, 2006,

the Ponzars were indebted to Countrywide Home Loans, Inc. in the sum of $491,894.96, which was secured by a deed of trust on the Ponzars' home ("Countrywide Loan"). Mr. Ponzar sought to refinance the Countrywide Loan and to that end, applied for a new loan from Cornerstone. Cornerstone agreed to advance a new loan to Mr. Ponzar that would be secured by the Ponzars' home ("Cornerstone Loan"). The Cornerstone Loan was scheduled to close on January 12, 2006. However, there was a dispute regarding "closing costs" of the loan and the Ponzars refused to complete the closing. Mr. Ponzar and Cornerstone negotiated a new loan, which allowed for closing costs and had a higher interest rate than the original Cornerstone Loan. The new loan closed on or about January 19, 2006.

Mr. Ponzar signed a promissory note ("Note") and a deed of trust ("Deed") on January 19, 2006. However, some of the documents were dated January 12, 2006 and a Cornerstone official instructed Mr. Ponzar to backdate other documents to January 12, 2006. Mrs. Ponzar arrived later and signed the Deed and other closing documents. Mrs. Ponzar did not sign the Note. After signing the closing documents, Mrs. Ponzar noticed that the interest rate was higher than what Mr. Ponzar and Cornerstone had agreed upon.

Meanwhile, on January 19, 2006, Cornerstone paid off the Countrywide Loan in the amount of $491,894.96 by overnight mail, which was delivered to Countrywide on January 19, 2006. On January 23, 2006, the Ponzars sent two letters, one from Mrs. Ponzar and one from Mr. Ponzar, rescinding the Cornerstone loan.[1] Jeffery Fetterhoff, a representative of Cornerstone, called Mr. Ponzar to acknowledge receipt of the letters of rescission and to "try to find a resolution to any problem that [Cornerstone] might have with [Mr. Ponzar]." Mr. Ponzar then entered into negotiations with Cornerstone for a new two-year loan with a five percent interest rate. These negotiations did not result in a new loan because the parties had a dispute about whether Mr. Ponzar had rescinded the Cornerstone Loan. On March 6, 2006, Cornerstone informed the Ponzars that they had a binding mortgage obligation on the Cornerstone Loan because their letters of rescission were untimely. On April 5, 2006, Cornerstone filed its deed of trust against the Ponzars' residence.

On July 24, 2006, Cornerstone filed a four-count petition against the Ponzars. The petition sought: in Count I, a declaratory judgment as to whether the Ponzars properly rescinded the loan; in Count II, damages for unjust enrichment; in Count III, imposition of an equitable lien on the Ponzars residence; and, in Count IV, judicial foreclosure. The Ponzars filed an answer containing a variety of affirmative defenses. On September 22, 2006, Cornerstone filed a motion for summary judgment on all counts. The Ponzars filed a response to Cornerstone's motion for summary judgment on October 20, 2006. The trial court granted summary judgment in favor of Cornerstone on Counts I and III and disposed of the remaining counts as moot or denied.

### Standard of Review

Our review of summary judgment is *de novo.* *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). We will

---

1. The terms "letter of rescission," "notice of rescission" and "rescission notice" are used interchangeably throughout this opinion.

uphold the grant of summary judgment on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. We accept as true facts contained in affidavits or otherwise in support of a party's motion unless contradicted by the nonmoving party's response to the summary judgment motion. *Id.*

Summary judgment is a drastic remedy, which borders on a denial of due process and effectively denies the party against whom it is entered a day in court. *Bellon Wrecking & Salvage, Co. v. Rohlfing*, 81 S.W.3d 703, 705 (Mo.App. E.D.2002). Therefore, this court will review the record in the light most favorable to the party against whom judgment was entered and accord that party the benefit of all inferences which may reasonably be drawn from the record. *ITT*, 854 S.W.2d at 376.

### Discussion

The Ponzars claim six points on appeal. For the sake of efficiency and clarity, we will address their points out of order. In their third point, the Ponzars claim that the trial court erred in awarding damages against Mrs. Ponzar because she was not a signatory on the Note and therefore was not liable to Cornerstone on the Note. The Ponzars argue that even though Mrs. Ponzar signed the Deed, she did not sign the Note and was therefore not obligated on the Cornerstone Loan.

■ The Ponzars claim, and we agree, that since Mrs. Ponzar is not a borrower on the Note, she has no obligation to return the proceeds of the loan to Cornerstone. Cornerstone tacitly concedes this point but nevertheless argues that Mrs. Ponzar should be liable on the Note as well because: she signed the Deed for the purpose of securing the Cornerstone Loan;

the proceeds of the Cornerstone Loan went to pay off the Countrywide Loan, which she had a personal obligation to pay; she owned and lived at the residence securing the loan; and, she was unjustly enriched as an owner of the property with no obligation to pay the loan secured by the property. We are not persuaded by Cornerstone's arguments in this regard.

Paragraph 13 of the Deed specifically states, in relevant part, that:

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"); (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument;(b) is not personally obligated to pay the sums secured by this Security Instrument.

The plain language of the forgoing paragraph of the Deed reveals the parties' unambiguous intention that Mrs. Ponzar, not being a signatory on the Note secured by the Deed, was not to be personally liable for the proceeds of the Note. If Cornerstone desired to be able to look to Mrs. Ponzar for satisfaction of the Note, it could have required her to be a signatory on the Note. Cornerstone did not do so and we cannot, by our decision, rewrite the contract by holding Mrs. Ponzar liable on the Note. Moreover, the Truth In Lending Act ("TILA") expressly states that "the obligor shall tender the property to the creditor . . ." 15 U.S.C.A. Section 1635(b). Mrs. Ponzar is not an obligor on the Cornerstone loan and therefore has no duty to tender the loan proceeds by virtue of either the Deed or Section 1635(b). See *Hess v. Citibank, (South Dakota), N.A.,* 459 F.3d 837, 844 (C.A.8 (Mo.), 2006). The trial court, therefore, erred in awarding damages against Mrs. Ponzar. Point III

is granted.[2]

*Interest*

In their first point, the Ponzars claim the trial court erred in granting summary judgment and awarding Cornerstone interest retroactively because TILA prohibits finance charges following a proper rescission. In its findings of fact and conclusions of law, the trial court found that Cornerstone did not receive any money or property from the Ponzars and did not record the Deed until April 5, 2006. The court found that the Ponzars sent a notice of rescission to Cornerstone on January 23, 2006 after Cornerstone had paid off the Countrywide Loan on January 19, 2006. The trial court reasoned that at the time the Ponzars exercised their right to rescind, Cornerstone was in compliance with TILA and as such, the Ponzars were required to immediately tender the proceeds of the Cornerstone Loan. The court concluded that because the Ponzars failed to tender the proceeds to Cornerstone, their rescission was ineffective and as a result, the Cornerstone Loan was still in effect. The trial court awarded Cornerstone interest on the Note dating back to January 23, 2006, the date on which the Ponzars sent their rescission notice. The propriety of the award of interest depends on whether the Ponzars properly exercised their right to rescission under TILA. We must therefore first determine if the Ponzars properly exercised their right to rescind the Cornerstone Loan. In order to do so, it is important that we outline the steps involved in a typical rescission process.

TILA's rescission provisions are set out in Section 1635 of 15 U.S.C.A.[3] Regulation Z [4] provides:

(1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void

---

**2.** Even though we reverse the judgment of the trial court as against Mrs. Ponzar, we will continue to the use the term "Ponzars" throughout the remainder of this opinion. Additionally, any further reference to the "letter of rescission" or "notice of rescission" relates only to the letter of rescission sent by Mr. Ponzar.

**3.** Section 1635 of 15 U.S.C.A. provides, in relevant part, that: [i]n the case of any consumer credit transaction ... in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property ..., **the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section** together with a statement containing the material disclosures required under this subchapter....

15 U.S.C.A. Section 1635(a)(2003)(Emphasis added).
Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value ... 15 U.S.C.A. Section 1635(b)(2003)(Emphasis added).
An obligor's right of rescission **shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor** ...
15 U.S.C.A. Section 1635(f) (2003)(Emphasis added).

**4.** As used in this opinion, the term, "Regulation Z," collectively refers to the provisions of the Code of Federal Regulations found in Title 12, part 226 (12 C.F.R. 226.1, *et seq.*).

and the consumer shall not be liable for any amount, including any finance charge.

(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value ... Regulation Z, 12 C.F.R. Section 226.23(d)(1)-(3).

"The sequence of rescission and tender set forth in Section 1635(b) is a reordering of common law rules governing rescission.... Under Section 1635(b), ... all that the consumer need do [to begin the process] is notify the creditor of his intent to rescind ... [B]ecause rescission is such a painless remedy under the statute (placing all burdens on the creditor), it acts as an important enforcement tool, insuring creditor compliance with TILA's disclosure requirements." *Johnson v. GMAC Mortg. Corp.*, 162 S.W.3d 110, 120–121 (Mo.App. W.D.2005) (quoting *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1140 (11th Cir.1992)). The U.S. district court for the Northern District of Ohio gave a succinct explanation of what follows when a borrower properly notifies a creditor of

his intent to rescind under TILA when it opined that:

TILA's rescission provisions render a contract voidable, not void. The fact that TILA permits individuals to avoid enforcement of consumer transactions, such as the loan in the present case, essentially means that all agreements subject to its provisions are *per se* voidable. The language of the statute and regulation provide that the security interest "becomes void" when an obligor exercises his or her right to rescind. This assumes that the right to rescind has become perfected, however, and is more than the mere assertion of such a right. *Thus, the right to rescind must flow from either the creditor's acknowledgment that such a right is available, or an appropriate decisionmaker's determination that it is available.* When a lender disputes a borrower's purported right to rescind, the decisionmaker must decide whether conditions for rescission have been met. A demand for rescission is not self-executing. Thus, rescission under TILA is not automatic where a lender or creditor disputes the borrower's or obligor's purported claim of rescission.

*Anderson v. Delta Funding Corp.*, 316 F.Supp.2d 554, 562–563 (N.D.Ohio 2004) (Internal citations omitted) (emphasis added).[5]

Thus, under TILA and Reg. Z, an obligor only has to send a timely notice to the creditor in order to begin the rescission process. The creditor can then, either acknowledge that the obligor has a right to rescind, return any money or property received from the obligor and take the necessary steps to cancel the security interest

5. However, rescission under the TILA is "automatic" in the sense that, in contrast to common law rescission, the borrower need not first return the loan proceeds received under the agreement to effect a rescission. *Large v. Conseco Finance Servicing Corp.*, 292 F.3d 49, f. 6 (1st Cir.2002).

created by the transaction or, in the alternative, dispute that the obligor has a right to rescind, hold on to any money or property received from the obligor and leave the security interest intact until a proper decision-maker has determined whether the obligor had a right to rescind. After the creditor has either conceded that the obligor has a right to rescind or a proper decision-maker has determined the issue, the obligor's responsibility to tender any money or property received from the creditor is triggered. See Section 1635(b).

Under TILA, an obligor is permitted to rescind a credit transaction either within three days of closing or within three years if the lender violated the disclosure provisions of TILA. See 15 U.S.C.A. Sections 1635(a) & (f).

In the present case, there is a dispute as to whether the Cornerstone Loan was consummated on January 12, 2006 or on January 19, 2006. Cornerstone claims that the loan that was made on January 19, 2006, was a modification of the loan that was made on January 12, 2006. On the other hand, the Ponzars contend that they had refused to complete the closing process for the January 12, 2006 loan and had been offered a new loan by Cornerstone, which they closed on January 19, 2006. We find, *sua sponte*, that in either event, the Ponzars notice of rescission was timely sent, thereby fulfilling their initial requirement and preserving their right to remedies under TILA. See *Johnson*, 162 S.W.3d at 121.

The basis of this finding is that, if we were to find that the Cornerstone Loan closed on January 12, 2006 as Cornerstone contends, the Ponzars will have had up to three years from that date to rescind because Cornerstone violated the notice requirements of TILA. Cornerstone gave the Ponzars the required notice of right to cancel, which the Ponzars acknowledged receiving on January 12, 2006. The notice of right to cancel stated that the Ponzars could cancel the loan within three business days from the date of the transaction, which was stated as January 12, 2006. However, the notice also stated that they had until midnight of January 15, 2006 to send their notice of rescission. This was not the correct date mandated by TILA and as such, was a violation of the notice provisions of the statute.

TILA gives borrowers three business days to exercise their right of rescission and Regulation Z requires the creditor to expressly state the last day on which the borrower can exercise this right. See *Williamson v. Lafferty*, 698 F.2d 767, 768–69 (5th Cir.1983); *Semar v. Platte Valley Federal Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th Cir.1986). Pursuant to the TILA and Regulation Z, the last date on which the Ponzars could exercise their right to rescind would have been January 17, 2006 because, January 15, 2006 was a Sunday and January 16, 2006 was a legal holiday[6] and as such, do not qualify as business days for the purposes of TILA.[7] As noted

6. Business day means a day on which the creditor's offices are open to the public for carrying on substantially all of its business functions. However, for purposes of rescission under §§ 226.15 and 226.23, and for purposes of Section 226.31, **the term means all calendar days except Sundays and the legal public holidays** specified in 5 U.S.C. 6103(a), such as New Year's Day, **the Birthday of Martin Luther King, Jr.,** Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, and Christmas Day. 12 Truth in Lending Reg. Z, CFR § 226.2, 15 U.S.C.A. foll. Section 1700. (Emphasis added).

7. This court may take judicial notice of calendars, including the dates on which particular days of the week fell. *State ex rel. Department*

above, Cornerstone's notice stated that the Ponzars had until January 15, 2006 to rescind. Cornerstone therefore violated the notice requirement of TILA and Regulation Z.

"To insure that the consumer is protected ... [TILA and Regulation Z must] be absolutely complied with and strictly enforced." *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir. 1983) (holding that technical violation, even if merely a "minor variation in language and type size" from TILA requirements, imposes liability); *see also Huff v. Stewart–Gwinn Furniture Co.*, 713 F.2d 67, 69 (4th Cir.1983) (minor violations of TILA and Regulation Z impose liability even if, as creditor alleged, consumer "was not misled and was given a meaningful and correct disclosure of crucial credit terms.").

Although technical in nature, Cornerstone's violation entitles the Ponzars to rescind the Cornerstone Loan up to three years from the date of the transaction. See *Semar*, 791 F.2d at 702 (holding that borrowers were entitled to rescind within three years where a creditor's form omitted the expiration date, although it stated that the rescission right expired three business days after July 16). Therefore, the Ponzars' notice of rescission was timely sent on January 23, 2006.

■ Nevertheless, "a notice to rescind under TILA is procedural, and serves only as the method by which a party indicates his or her intent to disaffirm the contract. *Until the creditor honors the notice, or [the proper decision-maker] certifies its validity, it is without legal effect, and serves only to preserve the consumer's ability to pursue the remedies provided*

*of Social Services, Family Support Div. v. K.L.D.*, 118 S.W.3d 283, 288 (Mo.App. W.D.

*under the statute ....*" *Anderson*, 316 F.Supp.2d at 562–563 (emphasis added) (internal citations omitted). Just recently, the Western District held that "tender back of consideration received is not a prerequisite to rescission." *Johnson*, 162 S.W.3d at 121. Therefore, having timely notified Cornerstone of their intention to rescind, the Ponzars had no further obligation until Cornerstone honored the notice of rescission by acknowledging that the Ponzars had properly exercised their right to rescind or a proper decision-maker had determined that the notice was timely and thus valid.

■ There is evidence that Cornerstone acknowledged receipt of the letters of rescission. Jeffery Fetterhoff testified at his deposition that he had called Mr. Ponzar to acknowledge receipt of the letters of rescission and "to try to find a resolution to any problem that [Cornerstone] might have with [Mr. Ponzar]." However, there is nothing in the record to show that Cornerstone honored the Ponzars' notice of rescission by acknowledging that they had a right to rescind and taking any action to reflect termination of the Deed. On the contrary, Cornerstone expressly disputed that the Ponzars timely exercised their right to rescission in a March 13, 2006 letter sent to Mr. Ponzar. Before that, James Dean, Cornerstone's regional manager, informed Mr. Ponzar that if he would acknowledge that he "did not legally rescind" the Cornerstone Loan, he (Dean) would be able to refinance that loan. Cornerstone's conduct in filing the Deed after they had received the notice of rescission and after months of negotiations for a new loan to replace the Cornerstone Loan, clearly manifests their denial that the Ponzars had a right to rescind. Additionally,

2003).

Cornerstone's petition sought a declaratory judgment as to whether the Ponzars timely and properly rescinded the Cornerstone Loan.

■ Without a concession from Cornerstone that the Ponzars had properly exercised their right to rescind, the trial court, as an appropriate decision-maker, was first required to determine the validity of the Ponzars' notice of rescission where Cornerstone had asserted that the notice was not timely sent. See 15 U.S.C.A. Sections 1635(a) & (b); 12 Truth in Lending Reg. Z, CFR Section 226.2; *Large v. Conseco Finance Servicing Corp.*, 292 F.3d 49, f. 6 (1st Cir.2002); *Anderson*, 316 F.Supp.2d at 562–563. The trial court failed to do so. Rather, the court reasoned that because the Ponzars had not given Cornerstone any money or property as of the date of their rescission notices, Cornerstone did not have anything to return to the Ponzars and as such, Cornerstone was in compliance with TILA and Regulation Z. As a result, the court concluded that the Ponzars were required to immediately tender the proceeds of the Cornerstone Loan in order to effectuate their attempted rescission. The court's reasoning ignores the key facts that Cornerstone disputed that the Ponzars had properly exercised their right to rescind and a proper decision-maker had not yet determined the issue.[8] Until the court had had an opportunity to determine whether the Ponzars properly exercised their right to rescind, the Ponzars' responsibility to tender under TILA had not arisen. The court thus erred in prematurely concluding that the Ponzars'

rescission was ineffective because they had failed to immediately tender where Cornerstone denied that they had properly exercised their right to rescind.

Cornerstone essentially argues that the trial court had the authority to deny the Ponzars the right of rescission because they had failed to tender at the time they exercised their right to rescind despite Cornerstone's denial that their (Ponzars') notice of rescission was timely. This argument is misplaced. It is true that the court can equitably condition rescission upon tender of the amounts previously advanced by the lender, leaving the security interest in place until the tender is made. See Section 1635(b); *AFS Financial, Inc. v. Burdette*, 105 F.Supp.2d 881, 881 (N.D.Ill.2000); *Johnson*, 162 S.W.3d at 121. However, this presupposes a determination that the borrowers have properly exercised their rights to rescind. See Section 1635(b). As such, the court's equitable powers do not come into play in the statutory rescission process until the creditor has acknowledged the borrower's right to rescind or a proper decision-maker has determined that the borrower had properly exercised her right to rescind. *Id.* In this case, Cornerstone did not acknowledge the Ponzars' right to rescind and the trial court failed to make that determination before moving on to the question of tender.

■ As we have determined above, the Ponzars' notice of rescission was timely sent to Cornerstone thereby preserving their ability to access the remedies avail-

---

**8.** For the purpose of obtaining summary judgment, Cornerstone stipulated that the Ponzars had a right to rescind that Cornerstone Loan. However, the general rule that courts are bound by stipulations of litigants cannot be invoked to bind or circumscribe a court in its determination of questions of law; and no agreed statement of facts can fix a conclusion of law. *Midella Enterprises, Inc. v. Missouri State Highway Commission*, 570 S.W.2d 298, 301 (Mo.App. Springfield 1978). Thus, Cornerstone's stipulation should have no effect on the court's determination of whether the Ponzars timely had a right to cancel and whether they properly exercised that right.

able to them under TILA's rescission provisions. We will now address the issue of interest. TILA provides that "when an obligor exercises his right to rescind under subsection (a) of this section, **he is not liable for any finance or other charge** ... " 15 U.S.C.A. Section 1635(b) (emphasis added). Having determined that the Ponzars properly exercised their right to rescind, we must find according to TILA's express language that the award of interest, which is a finance charge[9], directly contravenes the letter and spirit of the statute and as such, was erroneous. The award of interest is reversed. Point I is granted.

### Attorney's Fees

■ In their second point, the Ponzars claim that the trial court erred in awarding Cornerstone attorney's fees according to the Note signed by Mr. Ponzar on January 19, 2006 because the proper exercise of their right of rescission voids the Note, and there is no provision under TILA that allows a prevailing lender to be awarded attorneys fees.

The trial court concluded that because the Ponzars did not tender the loan proceeds at the time of their "purported rescission," the rescission was not effective and the Cornerstone Loan was still in effect. As a result, the trial court awarded Cornerstone attorney's fees as provided for by the Note. We find the award of attorney's fees erroneous and reverse.

Having found that the Ponzars properly exercised their right to rescind the Cornerstone Loan, we cannot sustain an award of attorney's fees that is based on the terms of the properly rescinded Note. The award of attorney's fess is reversed. Point II is granted.

### Ponzars' Counter-Claim

The Ponzars claim in their fifth point that the trial court erred in denying their motion for leave to file omitted counterclaims. In the counterclaims, the Ponzars alleged that Cornerstone violated "the Missouri Merchandise Practices Act by deception, fraud, false pretense, false promise, misrepresentation and the concealment, suppression and omission of material facts." They argue that they are forever barred from asserting their counterclaims despite showing good cause for the failure to assert the counterclaims earlier, and the absence of any injustice to Cornerstone if the trial court had granted them leave to file the counterclaims.

The trial court denied leave because the Ponzars were barred from bringing those counterclaims after the court had entered summary judgment in that: the counterclaims accrued before Cornerstone filed its petition; the counterclaims involved the same transaction and as such were compulsory counterclaims that had to be asserted; and, the Ponzars were aware of all the facts alleged in their counterclaims at the time when Cornerstone filed its petition.

■ "Rule 55.32(e)[10] permits a counterclaim to be asserted, with leave of court, by amending an answer. The decision to grant or deny a request to amend a pleading to assert a counterclaim or amend a previously asserted counterclaim lies within the sound discretion of the trial court. A decision to deny a request to amend will not be disturbed on appeal unless there is a showing that the court palpably and obviously abused its discretion. The determination of whether a circuit court abused its discretion in denying leave to

---

9. 15 U.S.C.A Section 1605(a)(1).

10. All rule references are to Missouri Court Rules (2007).

amend is best measured in terms of whether justice is furthered or subverted by the course taken.' Factors to be considered include: (1) the hardship to the moving party if leave to amend is denied; (2) the reasons for the moving party's failure to include the matter in the original pleadings; and (3) the injustice to the nonmoving party should leave to amend be granted." *Choate v. Hicks*, 983 S.W.2d 611, 613 (Mo.App. S.D.1999) (*abrogated on other grounds by Joel Bianco Kawasaki Plus v. Meramec Valley Bank*, 81 S.W.3d 528, 534 (Mo. banc 2002)) (internal citations omitted).

◼ "A pleading shall state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Rule 55.32(a). Rule 55.32 serves to consolidate all logically related claims into a single case "through the *penalty of precluding the later assertion of omitted claims*." *Joel Bianco Kawasaki*, 81 S.W.3d at 532 (internal quotation omitted) (emphasis in original). "When a claim is compulsory, you use it or lose it. Such is the case with the compulsory counterclaim rule ..." *Hemme v. Bharti*, 183 S.W.3d 593, 596 (Mo. banc 2006). The compulsory counterclaim rule is purposefully designed to enhance judicial economy. See *Joel Bianco Kawasaki*, 81 S.W.3d at 532; *Cantrell v. City of Caruthersville*, 359 Mo. 282, 221 S.W.2d 471, 474 (1949). "[T]he general purpose of the [compulsory counterclaim] rule ... is to avoid a multiplicity of suits and to dispose of litigation more expeditiously and properly." *State ex rel. Buchanan v. Jensen*, 379 S.W.2d 529, 531 (Mo. banc 1964).

◼ In the case *sub judice*, the Ponzars, having been involved in the subject matter of the litigation from day one, were well aware of all the facts underlying their counterclaims at the time when Cornerstone filed its petition. It follows that the counterclaims had accrued by the time the Ponzars filed their answer to Cornerstone's petition. Additionally, all of the counterclaims arose out of the same transaction as Cornerstone's petition, and as such, were compulsory counterclaims that should have been raised in the Ponzars' answer to Cornerstone's petition. See Rule 55.32(a). The Ponzars stated in their response to Cornerstone's motion for summary judgment that "any judgment against defendants will likely be offset by counterclaims that defendants plan to file against Cornerstone, as a result of its malice." This evinces knowledge on the part of the Ponzars that they had counterclaims against Cornerstone.

The Ponzars argue that they had shown good cause for their delay in asserting their counterclaims in that they did not receive from Cornerstone, information necessary to assert their counterclaims until December 8, 2006. We are not persuaded by this argument because the record is devoid of any "newly discovered evidence" that would have aided the assertion of those counterclaims. All the alleged violations that form the basis of the Ponzars' counterclaims stemmed from facts that were within the knowledge of the Ponzars when they filed their answer to Cornerstone's petition. Additionally, the Ponzars had the option of using judicial help in obtaining whatever information they claim Cornerstone had withheld. See Rule 61.01.

Although the Ponzars were aware of the facts that formed the basis of their counterclaims, they failed to assert those counterclaims when they were required to do

so. In fact, they did not assert their counterclaims or move the court for leave to file them until the court had already granted Cornerstone's motion for summary judgment. Granting the Ponzars leave to assert their counterclaim after summary judgment had been granted would have required the trial court and Cornerstone to restart the case. This would have been unfair and unjust to Cornerstone, and resulted in an inefficient use of judicial resources. We cannot find that the trial court abused its discretion in denying the Ponzars' leave to assert their counterclaims after the grant of summary judgment. Point V is denied.

### *Failure to Tender*

In their sixth point, the Ponzars claim that the court erred in finding that the Ponzars' attempt at rescission was ineffective because the Ponzars failed to tender and in awarding Cornerstone monetary damages in that the Ponzars' offer to enter into a new loan to replace the Cornerstone Loan constituted tender. There is evidence in the record indicating that, after the Ponzars had sent their letters of rescission, they started negotiating with Cornerstone for a new loan to replace the Cornerstone Loan.[11] The Ponzars contend that they reached an agreement with Cornerstone whereby Cornerstone promised to refinance the Cornerstone Loan but later reneged on that promise. The Ponzars argue that their agreement to enter into a new loan with Cornerstone and Cornerstone's agreement to refinance after receiving the notice of rescission, constitutes tender as a matter of law. Cornerstone responds that a valid tender cannot be conditioned on an offer to obtain a loan from some other source to fund the tender.

Because we found in Point I that the trial court erred in finding that the Ponzars' rescission was ineffective for failure to tender, we need not address this point. However, to the extent that the Ponzars seem to argue that their purported tender should preclude Cornerstone from recouping the proceeds of the Cornerstone Loan, we find that the Ponzars failed to tender.

"In a situation where a buyer can only perform conditioned upon being able to get the funds from someone else, the tender cannot be considered an acceptable one." *Lancaster v. Simmons*, 621 S.W.2d 935, 943 (Mo.App. W.D.1981). It is also well established that a proper tender must be unqualified and unconditional. *Id.* at 944.

 Applying the above-stated principles, the Ponzars' offer to enter into a new loan to replace the Cornerstone Loan does not qualify as a proper tender to trigger the forfeiture provisions of TILA. See *Johnson*, 162 S.W.3d at 122. The Ponzars were required, for the purposes of forfeiture, to tender the proceeds of the Cornerstone Loan or its reasonable value. They failed to do that. They are therefore not entitled to keep the proceeds from the Cornerstone Loan. The trial court did not err in finding that the Ponzars' offer to obtain a new loan from Cornerstone to replace the Cornerstone Loan did not constitute a valid tender. Point VI is denied.

In their fourth point, the Ponzars claim that the trial court erred in granting summary judgment without addressing the viability of their affirmative defenses. In their response to Cornerstone's motion for summary judgment, the Ponzars raised a variety of affirmative defenses. The trial court found that "the affirmative defenses raised by the Ponzars do not bar Cornerstone's right to receive the return of its money advanced under the Cornerstone Loan, in light of Cornerstone's stipulation

---

**11.** The negotiation did not result in a new loan.

concerning the exercise of the right of rescission."

In light of our earlier finding that the trial court erroneously granted Cornerstone's motion for summary judgment because the Ponzars properly exercised their right to rescind the Cornerstone Loan, we need not address the Ponzars' claim that the trial court erred in not considering their affirmative defenses. Point IV is denied as moot.

### Conclusion

The trial court erred in awarding damages against Mrs. Ponzar because she is not liable on the Note. In addition, the trial court erred in granting summary judgment in favor of Cornerstone and in awarding interest and attorney's fees to Cornerstone. With regard to the foregoing, this court has the authority to declare the judgment the trial court ought to have given. Rule 84.14. Pursuant to that authority, the grant of summary judgment and award of interest and attorney's fees in favor of Cornerstone is reversed. See *Jefferson County Fire Protection Districts Ass'n v. Blunt*, 205 S.W.3d 866, 868 (Mo. banc 2006); *Stone v. Farm Bureau Town & Country Ins. Co. of Missouri*, 203 S.W.3d 736, 749 (Mo.App. S.D.2006). Since this court has determined that the Ponzars had met the conditions for rescission, the case is remanded to the trial court to enforce the Ponzars' obligation to tender pursuant to Section 1635(b). In all other respects, the judgment is affirmed.

*LAWRENCE E. MOONEY, P.J.,* concurs.

BOOKER T. SHAW, J., concurs.