IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-522

Filed 17 December 2025

Mecklenburg County, No. 24CV028549-590

THE LAW OFFICE OF ROBERT FORQUER, PLLC, Interpleader Plaintiff,

v.

SUSAN ARCURI, JONATHAN BERNARD RENEGAR and STEPHANIE ANN VINCENT, Interpleader Defendants.

And

SUSAN ARCURI, JONATHAN BERNARD RENEGAR and STEPHANIE ANN VINCENT, Crossclaim Plaintiffs and Crossclaim Defendant

Appeal by crossclaim defendant from order entered 20 February 2025 by Judge Karen Eady-Williams in Mecklenburg County Superior Court. Heard in the Court of Appeals 15 October 2025.

*Fitzgerald Hanna & Sullivan, PLLC, by Andrew L. Fitzgerald, for crossclaim plaintiff-appellees.*

*Savage Law PLLC, by Donna P. Savage, for crossclaim defendant-appellant Arcuri.*

ARROWOOD, Judge.

The crossclaim defendant, Susan Arcuri ("Arcuri"), appeals from the trial court's order granting summary judgment to the crossclaim plaintiffs, Stephanie Ann

Vincent and Jonathan Bernard Renegar ("the Renegars")[1]. For the following reasons, we affirm the trial court's order.

## I.    Background

In 2018, Arcuri was the sole owner of a property at 5107 Waldron Meadow Drive in Charlotte ("Waldron Meadow"). She conveyed a 50% interest in the property to John Wayne Renegar ("Mr. Renegar") in 2019. On 17 February 2021, Arcuri signed a promissory note ("the Note") for a $245,000.00 loan from Fairway Independent Mortgage Corporation. Arcuri was the only signer on the Note which indicated her as the borrower. The Note was supported by a Deed of Trust ("the Deed") that was signed by Arcuri and Mr. Renegar and identified them both as "borrowers."

The Deed is a standard "Fannie Mae" form transferring legal title to Waldron Meadow to a trustee as security for the Note. Section 13 of the Deed states that the "Borrower's obligations and liability shall be joint and several." However, the same section also clarifies:

> [A]ny Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; [and] (b) is not personally obligated to pay the sums secured by this Security Instrument[.]

---

[1] Stephanie and Jonathan are the adult children of John Wayne Renegar; Jonathan was sued in his individual capacity and as executor of the Estate of John Wayne Renegar.

On 4 May 2023, Mr. Renegar died testate. His interest in Waldron Meadow passed pursuant to his will to his two children, the Renegars in equal shares. Thus, after Mr. Renegar's death, Arcuri owned a 50% interest in Waldron Meadow while the Renegars each owned a 25% interest. On 20 November 2023, Arcuri and the Renegars entered into a contract for the sale of Waldron Meadow to a third party, free from encumbrances.

After entering the contract, a dispute arose between Arcuri and the Renegars about the distribution of the proceeds of the sale. Specifically, they disagreed about whether the Renegars' sale proceeds should be used to help pay the remaining balance on the note and satisfy the lien on Waldron Meadow. Arcuri claimed that she and the Renegars were all responsible for paying off the remaining loan balance. Under her argument, after the mortgage was paid, she would be entitled to 50% of the net proceeds while the Renegars would each be entitled to 25%, in accordance with their ownership interests. Meanwhile, the Renegars contended that the remaining loan balance should be deducted solely from Arcuri's share of the proceeds.

The parties entered into an Escrow Agreement to allow them time to resolve their dispute about the proceeds while still fulfilling their contract to sell Waldron Meadow. The parties did not come to a resolution and so the escrow agent, the Law Office of Robert Forquer PLLC, filed an interpleader complaint on 3 July 2024. In August 2024, Arcuri and the Renegars filed crossclaims against each other claiming

different distributions of proceeds. Both parties moved for summary judgment and the matter came for hearing on 7 October 2024.

The trial court issued an order granting summary judgment in favor of the Renegars on 20 February 2025. The court found that Arcuri was the sole obligor on the Note and that the Deed only encumbered her one-half interest in Waldron Meadow. Accordingly, the court ordered that Arcuri was entitled to receive 50% of the sale proceeds, minus the remaining note balance, and the Renegars were each entitled to 25% of the sale proceeds. Arcuri gave notice of appeal to this Court on 18 March 2025.

## II.   Discussion

Arcuri contends that the trial court erred in granting summary judgment in favor of the Renegars. In accordance with her argument, Arcuri challenges several of the trial court's findings. For the following reasons, we affirm the trial court's order.

### A.   Standard of Review

We review orders granting summary judgment *de novo*. *Bryan v. Kittinger*, 282 N.C. App. 435, 437 (2022). Under *de novo* review, this Court "'considers the matter anew and freely substitutes its own judgment' for that of the lower court[]." *N.C. Farm Bureau Mutual Ins. Co., Inc. v. Herring*, 385 N.C. 419, 422 (2023) (quoting *Morrell v. Hardin Creek, Inc.*, 371 N.C. 672, 680 (2018)).

### B.   Distribution of Sale Proceeds

Arcuri argues that the note balance should be deducted from each party's share of the sale proceeds because the Deed encumbered the Renegars' interest in Waldron Meadow and thus subjected the Renegars' interest to the payment of the mortgage. Meanwhile, the Renegars contend that because the Deed states that they are not personally obligated to pay the Note, they are also not obligated to use their portion of the sale proceeds to satisfy the lien on their property interest. This is an issue of first impression before our court.

"A deed of trust is a three-party arrangement in which the borrower conveys legal title to real property to a third party trustee to hold for the benefit of the lender until repayment of the loan." *Skinner v. Preferred Credit*, 361 N.C. 114, 120 (2006). "When the loan is repaid, the trustee cancels the deed of trust, restoring legal title to the borrower, who at all times retains equitable title in the property." *Id.* at 121. While the loan remains unpaid, the deed of trust gives the lender "a contractual remedy for default, namely a right to foreclose under the instrument." *In re Foreclosure Under That Deed of Trust Executed by Azalea Garden Bd. & Care, Inc.*, 140 N.C. App. 45, 51 (2000).

A deed of trust is a contractual arrangement and is therefore governed by ordinary rules of contract interpretation. *See id.* at 52; *In re Clayton*, 254 N.C. App. 661, 667 (2017). "When interpreting contracts, 'all contemporaneously executed written instruments between the parties, relating to the subject matter of the contract, are to be construed together in determining what was undertaken.' " *In re*

*Clayton*, 254 N.C. App. at 667 (quoting *In re Hall*, 210 N.C. App. 409, 416 (2011)). "Thus, where a note and a deed of trust are executed simultaneously and each contains references to the other, the documents are to be considered as one instrument and are to be read and construed as such to determine the intent of the parties." *Id.* (quoting *In re Hall*, 210 N.C. App. at 416).

However, a promissory note and a deed of trust still represent separate obligations and, absent an agreement to the contrary, are independently enforceable. *Demai v. Tart*, 221 N.C. 106, 109 (1942). Additionally, being a borrower on a deed of trust does not automatically entitle the borrower to the rights and obligations contained in the note or other parts of the loan agreement. *See In re Clayton*, 254 N.C. App. at 668–70. In *In re Clayton*, a widow who had signed a deed of trust as a "borrower" with her late husband contested the foreclosure of their mortgaged property. *Id.* at 662. The widow pointed to a provision in the deed of trust that only allowed the note holder to accelerate the note if the borrower died and the property was not the principal residence of at least one "surviving borrower." *Id.* at 667. This Court held that the wife was not a "surviving borrower" as contemplated by the deed because she was not a borrower on the note and had not qualified for the reverse-mortgage that the deed supported. *Id.* at 668–70.

Here, when read together, the Note and the Deed evidence an intent to encumber the Renegars' interest in the property but not require them to pay the underlying loan. The Note and the Deed each have a separate purpose. The Note

6

outlines the borrower's duty to pay the loan. Meanwhile, as explained in the Note, the purpose of the Deed is to "describe[] how and under what conditions [the borrower] may be required to make immediate payment in full" and "protect[] the Note Holder from possible losses" if the borrower does not keep the promises made in the Note. The Deed accomplishes that by transferring legal title of Waldron Meadow to the trustee and granting the trustee the power of sale. Thus, the duty to pay the loan is encompassed in the Note while the security of the Note is encompassed in the Deed.

The separation of the agreements and obligations contained in the Note versus the Deed is further reinforced in Section 13 of the Deed which provides the duties of a "co-signer." That section specifies that any person who signs the Deed but does not execute the Note is not personally obligated to pay the sums secured by the Deed but rather signs "only to mortgage, grant, and convey" their interest as security. In doing so, the Deed specifies that the obligations and liabilities of each agreement are separately enforced only upon the signers of that agreement. Therefore, only the signers of the Note are responsible for paying the Note.

Arcuri argues that by subjecting his property to the mortgage lien, Mr. Renegar assumed the obligation to satisfy the mortgage lien in the event of a sale. Essentially, Arcuri's argument treats payment of the note and the release of the lien as distinct actions and assigns the release of the lien as a duty of every mortgagor. However, that mischaracterizes the relationship between a loan, a promissory note, and a deed

7

of trust. The promissory note represents the loan debt. Meanwhile, the deed of trust merely provides security for the loan agreement by ensuring a remedy in the case of default—it does not create an independent payment obligation.

While it is true that the only way to release the Deed was to pay the remaining balance on the Note, payment of the Note is still solely Arcuri's responsibility. Indeed, Section 23 of the Deed states that the Deed will be released "upon payment of all sums secured by" the Deed. Since the Deed also states that the Renegars are "not personally obligated to pay the sums secured by" the Deed, it follows that the Renegars are not responsible for the release of the Deed.

Altogether, the Deed and the Note are clear that Mr. Renegar did not assume any obligation on the Note when he signed the Deed. Rather, as the only borrower on the Note, Arcuri is the sole party responsible for paying the note balance. The parties' obligations on the Note are the same, whether payment on the Note is made in monthly installments, or all at once using the proceeds from a voluntary sale of the property. Though the Renegars' interest in Waldron Meadow was subject to the lien, there is no relevant distinction between satisfying the lien and paying the note balance. Therefore, the proceeds from the sale should be distributed such that the remaining balance on the Note is deducted solely from Arcuri's share.

Our determination that the Renegars are not obligated to pay the note balance is consistent with interpretations of the same deed of trust language in other jurisdictions. For example, courts have recognized that Section 13 clarifies that

persons signing the deed but not the note encumber their property interest without assuming any obligation on the note.

In *Beckhart v. Nationwide Tr. Servs.,* No. 11-CV-231, 2012 WL 3648105, at *5–7 (E.D.N.C. Aug. 12, 2012), the court applied North Carolina state law to interpret section 13 of a "Fannie Mae" deed. There, a couple had both signed the deed of trust but only the husband had signed the promissory note. *Id.* at *1–2. The couple challenged the validity of the deed, claiming that it misidentified the wife as a borrower on the note. *Id.* at *5. The court disagreed and interpreted the term "Borrower" as an overarching term that includes a subset, "co-signers," that are not obligated on the promissory note. *Id.* at *6. Similarly, in *In re Mertz*, No. A11-8099, 2012 WL 907780, at *4–5 (Bankr. D. Neb. Mar. 15, 2012), a bankruptcy court applied the same reasoning to find that, despite not signing the promissory note, a co-signer of the deed had encumbered their property.

Additionally, courts have found that co-signers are not entitled to the same rights under the note as signed borrowers on the note. In *Calle Monsalve v. CMG Financial*, No. EP-21-CV-00058, 2021 WL 2444168, at *4–5 (W.D. Tex. June 15, 2021), the court considered whether a co-signer to the deed had standing to bring a breach of contract claim against the holder of the note. The court reasoned that because the co-signer was not personally liable on the loan, there was no contractual obligation between her and the defendant and so she did not have standing. *Id.* at *4–5. Similarly, a federal district court in Maryland considered whether a co-signer

had standing under the Real Estate Settlement Procedures Act which only grants standing to "borrowers" in the mortgage industry. *Robinson v. Nationstar Mortg. LLC*, No. TDC-14-3667, 2019 WL 4261696, at \*5–6 (D. Md. Sep. 9, 2019). The court determined that because a co-signer had no contractual obligations under the promissory note, they did not have standing. *Id.* at 6.

Likewise, the Missouri Court of Appeals has found that co-signers do not have the same obligations as borrowers on the note. *See Cornerstone Mortg., Inc. v. Ponzar*, 254 S.W.3d 221, 224–25 (Mo. App. 2008). In *Cornerstone Mortgage, Inc.*, a couple refinanced a loan on which they were both borrowers. *Id.* at 224. However, on the new loan, only the husband signed the note. *Id.* The couple later rescinded the loan, and the court held that because the wife had no obligation on the note, she had no duty to tender the loan proceeds. *Id.* at 225.

Notably, the Ohio Court of Appeals has specifically found that a co-signer has no duty to use proceeds from the sale of the encumbered property to pay the note. *See Ogan v. Ogan*, 122 Ohio App.3d 580, 585 (1997). Ohio allows surviving spouses to seek contribution for payments on a note under which the spouses had a joint obligation. *Id.* at 584. In *Ogan*, a widow was seeking reimbursement under that rule for the amount she paid under a note her late husband had signed. *Id.* at 582–84. The husband's note was secured by a deed that he and the widow both signed as borrowers. *Id.* at 582. After her husband's death, the widow continued to make monthly payments on the note and eventually sold the encumbered property and used

the proceeds to satisfy the lien. *Id.* at 583. The widow argued that her status as a "borrower" on the deed made her obligated on the note, entitling her to reimbursement. *See id.* at 583–84. The court disagreed and found she was not obligated on the note in part because she was merely a co-signer to the deed. *Id.* at 585. Importantly, the court found that none of her payments under the note were obligatory—even where she used the sale proceeds to satisfy the lien on the property. *See id.*

These cases demonstrate that courts have consistently recognized that Fannie Mae deeds constitute an agreement separate from a promissory note with its own limited rights and obligations. Moreover, they repeatedly affirm, in a number of different contexts, that co-signers have no obligation on the note. Our decision applies the same principle here to find that because Mr. Renegar was merely a co-signer on the deed, the Renegars have no obligation to use their sale proceeds to pay the remaining balance on the note. Notably, Arcuri has not offered any authorities that support her interpretation to the contrary.

We note that there could be a scenario where the parties intended for the co-signer of the deed of trust to also be responsible for the loan despite not signing the promissory note. Where there is evidence of such an agreement, it could be relevant to the determination of whether the co-signer is responsible for payment of the note. Additionally, the stage of proceeding could affect the present obligations of the parties.

However, here, the parties sought a declaratory judgment of the proper distribution of the sale proceeds. Additionally, Arcuri presented no evidence outside of the Note and the Deed that Mr. Renegar had agreed to be obligated on the Note. Thus, we must look to the intent expressed by the language of the Note and the Deed. The language of the agreements, particularly Section 13, clearly states that co-signers are not responsible for the payment of the debt contained in the Note. Accordingly, the Renegars are not obligated to use their sale proceeds to pay the note balance. Therefore, we affirm the trial court's order that the Renegars are each entitled to 25% of the sale proceeds and Arcuri is entitled to the remaining 50%, minus the balance that was left on the Note.

### C.     Challenges to Trial Court's Findings

Arcuri challenged specific findings in the trial court's order. Arcuri's challenges can be categorized into three groups: challenges to findings of fact, challenges to conclusions of law regarding the encumbrance of the Renegars' property interest, and challenges to conclusions of law regarding the distribution of the proceeds. We address each group of challenges below.

### 1.     Findings 20–22

Findings 20–22 of the order state:

> 20. Nothing in the forecast of evidence indicates that Renegar received any personal benefit from the proceeds of the $250,000 personal loan obtained by Arcuri. And none of these funds appear to have been deposited into Renegar's bank account.

12

> 21. Nothing in the forecast of evidence indicates that prior to his death, Renegar agreed to or intended to pay off any portion of Arcuri's personal loan.
> 22. John Bernard Renegar and Stephanie Vincent never agreed to pay off any portion of Arcuri's personal loan.

Arcuri argues that Finding 20 is not a material fact, is based on speculation by the trial court, and is not supported by competent evidence. Arcuri also argues that Findings 21 and 22 are incorrect because the legal effect of the mortgage was to agree that Mr. Renegar's interest in the real property was responsible for payment of the mortgage.

Findings of fact are improper at the summary judgment stage. *Raymond v. Raymond*, 257 N.C. App. 700, 708 (2018). The basis of summary judgment is that there is no dispute of material fact. *Id.* Accordingly, while a trial court may recount uncontested facts in a summary judgment order, it should not resolve any contested facts. *Id.*

Here, the Renegars alleged in their crossclaim complaint that Mr. Renegar had not received any personal benefit from the proceeds and that none of the funds had been deposited into his account. In her answer, Arcuri denied that allegation and claimed it was immaterial. Thus, it was not proper for the trial court to find that none of the proceeds had been deposited into Mr. Renegar's bank account.

However, we agree that Finding 20 is not a material fact and thus not necessary to the trial court's order. Though evidence of Mr. Renegar receiving benefits from the loan could have been relevant to determining whether there was a

separate agreement that Mr. Renegar would be responsible for paying the note, the parties here have admitted that no separate agreement exists. Therefore, though Finding 20 was made in error, it does not warrant reversal as it is surplusage to the question to be determined. *Cf. City of Charlotte v. McNeely*, 8 N.C. App. 649, 653 (1970) (holding that irrelevant findings of fact "do not vitiate the judgment of dismissal and may be treated as surplusage.").

As to Findings 21 and 22, for the reasons stated above, we disagree with Arcuri's argument that the Deed contained an agreement to use Mr. Renegar's property interest to pay the mortgage. Therefore, Arcuri's challenge to these findings fail.

### 2.     Findings 30–32

Findings 30–32 generally state that the Renegars' interest in Waldron Meadow was not encumbered by the Deed. As explained above, though the Deed created no obligation for the Renegars to pay the Note, it did encumber their property interest. Thus, Findings 30–32 are erroneous. However, "a correct decision of the lower court will not be disturbed because the court gave a wrong or insufficient reason therefor." *In re T.M.L.*, 377 N.C. 369, 375 (2021) (quoting *Temple v. Temple*, 246 N.C. 334, 336 (1957)). Accordingly, despite the error in Findings 30–32, we affirm the trial court's ultimate judgment in favor of the Renegars. *See Hanson v. Legasus of N.C., LLC.*, 205 N.C. App. 296, 300–301 (2010) (affirming trial court's judgment despite errors of law).

3.   Findings 19, 23–24, 33–39

Findings 19, 23–24, and 33–39 outline the distribution of the sale proceeds and generally state that Arcuri was solely responsible for payment of the note.  Some portions of Findings 35 and 36 also state that the Renegars' property interest was not encumbered by the deed of trust.  Arcuri argues that these findings are erroneous because the Renegars' property interest is subject to and thus responsible for payment of the mortgage.

For the reasons above, we affirm the trial court's distribution of proceeds from the sale of Waldron Meadow.  The deed of trust encumbered the Renegars' property interest but did not impose any obligation to use their property interest to pay the note absent default.

III.   Conclusion

For the foregoing reasons, we affirm the trial court's order granting summary judgment in favor of the Renegars.

AFFIRMED.

Judge HAMPSON concurs.

Chief Judge DILLON concurs in result by separate opinion.

DILLON, Chief Judge, concurring in result.

This case raised a quite interesting real estate issue.

Defendants Susan Arcuri and her boyfriend, John Wayne Renegar, now deceased, owned a home (the "Property") as tenants in common. In 2021, Arcuri and Renegar executed a deed of trust to secure a debt to a bank. However, the promissory note evidencing the debt was signed *only* by Arcuri. That is, though Renegar was not a borrower on the note, he pledged his tenant-in-common interest to secure the debt evidenced by the note.

Mr. Renegar died in 2023, and his two children were his heirs. In 2024, Arcuri and the Renegar heirs contracted to sell the Property. To satisfy the obligation of Arcuri and the Renegar heirs to the buyer to convey clear title, the closing attorney used some of the purchase price to pay off the outstanding debt, as required by the bank to release the deed of trust.

This matter concerns a dispute between Arcuri and the Renegar heirs as to how to split the *net* proceeds from the closing. Arcuri contends the net proceeds should be split 50/50 between her and the Renegar heirs. The Renegar heirs, however, contend the payoff of the note should be charged against Arcuri's share, as only she was an obligor on the note. By way of illustration, assume the Property sold for $400,000.00 and the amount due on the note was $80,000.00. Based on Arcuri's contention, Arcuri and the Renegar heirs would split the net proceeds of $320,000.00 50/50, with each getting $160,000.00. Based on the Renegar heirs' contention,

however, the heirs and Arcuri would each be entitled to split the entire $400,000.00 50/50, but that the $80,000.00 from Arcuri's half would be used to pay off the note such that the Renegar heirs would receive $200,000.00 but that Arcuri would only receive $120,000.00.

In any event, the closing attorney wisely did not make the call but utilized the interpleader process under Rule 22 of our Rules of Civil Procedure. Arcuri and the Renegar heirs each filed pleadings, each seeking a declaration that her/their contention was correct.

The trial court entered summary judgment for the Renegar heirs, concluding the loan payoff would be paid entire from Arcuri's half. I agree with the majority that the trial court got it right, however, based on slightly different reasoning.

The majority generally agrees with the Renegar heirs, that since only Arcuri was liable under the note (as only she, and not Renegar signed it), any proceeds from the sale of the Property used to pay off the note *automatically* should come from Arcuri's portion. I believe the issue is much more nuanced.

As explained below, I believe the fact that Arcuri was the sole borrower does not *conclusively* require the payoff to come from her share. Rather, the issue turns on whether Renegar was acting as a *surety* in the 2021 loan transaction for the benefit of Arcuri, in which case the trial court got it right, **or** whether Arcuri was not acting as a surety in pledging his property interest because the loan transaction was intended to benefit both him and Arcuri.

Further, summary judgment is only appropriate where the evidence before the trial court established that Renegar was merely acting as a surety in pledging his interest in Property. At the summary judgment hearing, no competent evidence was offered to show that Renegar was not acting as a surety. Therefore, I believe the key issue on appeal is whether the nature of the 2021 loan transaction—where Arcuri and Renegar each pledged their respective interests in the Property but where only Arcuri signed the underlying note—creates a rebuttable presumption that Renegar was a surety *or* whether the nature of the 2021 transaction merely constitutes *some* evidence (but not a rebuttable presumption) Renegar was acting as a surety. Because I conclude the nature of the transaction created a rebuttable presumption Renegar was acting as a surety (to the extent of his interest in the Property)—a presumption Arcuri failed to produce *competent* evidence at summary judgment to rebut—I agree the trial court did not err by granting summary judgment for the Renegar heirs.

<u>Discussion</u>

The classic "surety" relationship involves a person ("S") co-signing a promissory note with the principal obligor ("P"), promising to repay a debt to the creditor. In such situation, both S and P are jointly and severally liable *to the creditor* for the note's repayment: "the [creditor] may sue [both] or either[.]" *National Bank v. Carr*, 121 N.C. 113, 113 (1897). *See In re Suttles*, 311 N.C. 325, 332 (1984) (reiterating that "the obligation of the surety is primary" and may "be sued jointly with the principal"). In such a case, however, the surety may seek indemnification

from the principal if called on by a creditor to satisfy the debt. *See Graebe v. Sides*, 151 N.C. 596, 599 (1909) (recognizing an implied covenant that the principal will indemnify the surety).

This case, however, involves another type of surety, one where S has not co-signed the note but rather has pledged property to secure the P's debt. Specifically, our Supreme Court has held one who pledges interest in real property to secure the debt of another is generally treated as a surety to the extent of her interest in the property pledged:

> It is settled by abundant authority that where a [debtor] mortgages his property for his debt, and in the same mortgage [the co-owner] conveys her own separate property as security for the same debt, her property so conveyed will be treated in all respects as a surety[.]

*Foster v. Davis*, 175 N.C. 541, 544 (1918) (internal marks and citations omitted). This is true even if the one pledging the real estate interest is not *personally* liable *to the lender* for the debt being secured:

> [Wife] has not promised to pay [her husband's] debt . . . and [therefore] no judgment can be recovered against her [by the lender].
>
> She has simply transferred her property to secure her husband's debt, and her property is treated as a surety.

*Edwards v. Jefferson Standard Life Ins. Co.*, 173 N.C. 614, 618 (1917). *See also Hinton v. Greenleaf*, 113 N.C. 6, 7 (1893).

With that said, it must be remembered that it is the party who asserts he is a surety who has the burden to prove he is, in fact, a surety.  *See Raleigh Banking & Trust Co. v. York*, 199 N.C. 624, 629 (1930) (burden is to prove "by the greater weight of the evidence" that he is a surety and not a principal); *Federal Land Bank v. Lieben*, 86 N.C. App. 342, 346 (1987) (same).

Where the note on its face states a party is signing as a principal, this creates a *presumption* the signer is a principal.  However, that signer may bring forth parol evidence to show that he, in fact, signed as—and should be treated as—a surety. *College Rd. v. Cottrell*, 236 N.C. App. 259, 267 (2014).

And where a note on its face states a party is signing as a surety, this creates a *presumption* that he is, in fact, a surety.  However, in such a case, the principal may introduce parol evidence to show that the purported surety is, in fact, a principal with him, and therefore liable for contribution, i.e., for his share of the obligation:

> As between the makers and [the lender] of a note, [the note] is the exclusive proof of the contract, and cannot be contradicted by extrinsic proof. . . .  But, as between the signers, [the note] is not made or intended to be exclusive proof of the agreement or relation between them. . . . Where one of two parties to a note signed with the addition of a *surety* to his name and the other without any addition, . . . the legal *presumption* was, that the signer who had the word *surety* attached to his name was surety, but it was not conclusive, and that the real purpose and relation of the parties might be shown by parol.

*Williams v. Glenn*, 92 N.C. 253, 256 (1885) (emphasis in original).  *See also Davis v. Alexander*, 207 N.C. 417, 419 (1934); *Federal Land Bank*, 86 N.C. App. at 346.

- 5 -

As stated above, the facts of this present case are different from a typical surety relationship where both are personally obligated on the promissory note. Here, Renegar did not sign the note but rather only a deed of trust. By the terms of the deed of trust, specifically Section 13 thereunder, Renegar's liability for the obligations *imposed by the deed of trust* were "joint and several" with Arcuri, except that he had no obligation to make payments due on the promissory note.[2]

And since the evidence at the summary judgment hearing (based on the admitted pleadings) conclusively shows that only Arcuri signed the note and that much of the proceeds from the sale of the Property went to pay off the note, I conclude a rebuttable *presumption* was created that Renegar's interest in the Property is to be treated as a surety.

However, this does not end the inquiry. Arcuri could have offered evidence at the summary judgment hearing to rebut the rebuttable presumption.

For instance, Arcuri could have produced evidence that the loan proceeds were, in fact, used for the benefit of both Arcuri and Renegar, such as for improvements to the Property. Or Arcuri could have produced evidence that the loan proceeds were used to refinance an existing mortgage to take advantage of lower interest rates

---

[2] I note the deed of trust imposes other obligations in addition to the obligation Arcuri had to repay the note. For instance, both Arcuri and Renegar bore the responsibility to maintain the Property, such that they would have been jointly and severally liable for any money expended by the lender to maintain the Property should Arcuri and Renegar have committed waste.

(where it was shown that Renegar's credit was bad and, therefore, the lender did not want Renegar to be a co-borrower on the note).

In any event, Arcuri did not produce any such evidence at the summary judgment to rebut the rebuttable presumption that Renegar's pledge should be viewed as a surety. Arcuri did deny in her responsive pleading an allegation by the Renegar heirs that the proceeds from the 2021 loan were used for Arcuri's sole benefit. However, Arcuri's responsive pleading was not verified and, therefore, not competent to create an issue of fact to survive summary judgment. *See Kessing v. National Mortg. Corp.*, 278 N.C. 523, 535–36 (1971) (unverified pleading is not competent to create an issue of fact for purposes of summary judgment); *In re M.A.C.*, 291 N.C. App. 35, 41 (2023) (same).

Therefore, since (1) the nature of the relationship between Renegar and Arcuri was properly pleaded and before the trial court, (2) the fact that Renegar only signed the deed of trust (and not the note) created a rebuttable presumption Renegar's pledge should be treated as a surety, and (3) Arcuri failed to offer competent evidence to rebut this presumption, the trial court properly determined that the payoff should come entirely out of Arcuri's share of the net proceeds.[3]

---

[3] If the sales price was $400,000.00 but the loan payoff was $250,000.00, in my view then (as a surety) the Renegar would be entitled to the entire $150,000.00 in net proceeds *and* to seek indemnity from Arcuri for $50,000.00 to be made whole.